## PEOPLE v FETT

Docket No. 238781. Submitted May 7, 2003, at Detroit. Decided June 10, 2003, at 9:20 A.M. In lieu of granting leave to appeal, the opinion of the Court of Appeals is vacated, and the matter is remanded to that Court for consideration of defendant's remaining issues, 469 Mich 907.

Kathie M. Fett was convicted by a jury in the Oakland Circuit Court, Richard D. Kuhn, J., of operating a vehicle while visibly impaired by intoxicating liquor. She was sentenced for a felony as a third-time offender. The defendant appealed, alleging error in the trial court's denial of her pretrial motion to admit pro hac vice an Ohio attorney as her counsel. The denial was based on the court's determinations that the case was a simple matter and that local counsel was competent.

The Court of Appeals *held*:

1. The right to counsel of choice is not absolute and may be denied where the defendant's right is outweighed by the public's interest in the fair, prompt, and efficient administration of justice. However, a trial court may not arbitrarily and unreasonably refuse to grant admission pro hac vice of an otherwise qualified out-of-jurisdiction attorney. To do so violates US Const, Am VI and Const 1963, art 1, §§ 13, 20. The arbitrary and unreasonable denial of counsel of choice is structural constitutional error mandating automatic reversal.

2. A trial court has the burden of justifying that its exercise of discretion in denying a motion to admit pro hac vice an out-of-jurisdiction attorney was in the interest of the fair, prompt, and efficient administration of justice.

3. The trial court in this case abused its discretion in denying the defendant's motion. The conviction and sentence must be vacated and the matter must be remanded to the trial court.

Conviction and sentence vacated; case remanded.

1. ATTORNEY AND CLIENT — CRIMINAL PROSECUTIONS — OUT-OF-JURISDICTION DEFENSE ATTORNEYS — CONSTITUTIONAL LAW.

A trial court's arbitrary and unreasonable refusal in a criminal prosecution to grant a timely request by the defense for admission pro

hac vice of an otherwise qualified out-of-jurisdiction attorney violates the defendant's right to counsel as guaranteed by US Const, Am VI and Const 1963, art 1, §§ 13, 20; such error is structural error mandating automatic reversal.

2. ATTORNEY AND CLIENT — CRIMINAL PROSECUTIONS — OUT-OF-JURISDICTION DEFENSE ATTORNEYS.

A criminal defendant seeking admission pro hac vice of an out-of-jurisdiction attorney as defense counsel is not obligated to prove a need for the out-of-jurisdiction counsel; although the right to counsel of choice is not absolute and may be denied where the defendant's right is outweighed by the public's interest in the fair, prompt, and efficient administration of justice, the trial court has the burden to justify its exercise of discretion in denying a motion to admit such counsel.

*Michael A. Cox,* Attorney General, *Thomas L. Casey,* Solicitor General, *David G. Gorcyca,* Prosecuting Attorney, *Joyce F. Todd,* Chief, Appellate Division, and *Marilyn J. Day,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Susan J. Smith*) for the defendant on appeal.

Before: MARKEY, P.J., and CAVANAGH and HOEKSTRA, JJ.

MARKEY, P.J. Defendant appeals by right her conviction after a jury trial on a charge of operating a vehicle while visibly impaired by intoxicating liquor (OWI), MCL 257.625(3), third offense, MCL 257.625(10)(c). Defendant argues that her Sixth Amendment right to counsel was violated when the trial court denied her pretrial motion to admit pro hac vice[1] Ohio attorney Mark Gardner as her counsel of choice. We agree.

---

[1] "This term refers to the practice of admitting out-of-jurisdiction attorneys who associate with in-state counsel for a particular case. It means literally 'for this turn; for this one particular occasion.'" *Ross v Reda,* 510

On November 10, 2000, defendant was arrested for operating a vehicle under the influence of intoxicating liquor (OUIL). The arresting officer administered two Data-Master breath tests at the police station; the results of both tests indicated a blood alcohol level of 0.11 grams per 210 liters of breath. Defendant was charged with OUIL or operating a vehicle with an unlawful blood alcohol level (UBAL), MCL 257.625(1). Also, because defendant had two prior alcohol-related convictions within ten years, MCL 257.625(23), the prosecutor notified defendant that if convicted of either OUIL/UBAL or the lesser included offense of OWI, she would be sentenced for a felony, MCL 257.625(8), (10). Walled Lake attorney Daniel Ambrose represented defendant in the district court. After a preliminary examination, the case was bound over to the Oakland Circuit Court for trial before Judge Richard D. Kuhn.

In circuit court, Ambrose filed a motion on behalf of defendant seeking the admission pro hac vice of Gardner as cocounsel. Defendant's motion averred that Gardner was a duly licensed practicing attorney who had been a member of the Ohio Bar since May 17, 1993. Further, the motion alleged that Garner was not under any disciplinary orders, would submit to the discipline of the court, and was associated with defendant's counsel of record, Ambrose. On May 9, 2001, the trial court denied defendant's motion, stating, "It is a simple OUIL case." Ambrose moved for reconsideration on May 23, 2001, asserting that Gardner was, in fact, defendant's counsel of choice to rep-

F2d 1172, 1173 n 1 (CA 6, 1975), citing Black's Law Dictionary (4th ed, 1968), p 1363.

resent her at trial. At a June 13, 2001, hearing on defendant's motion for reconsideration and motion for a stay of proceedings while she sought leave to appeal to this Court, the trial court ruled as follows:

> Let me say it this way, it is a discretionary motion. The Court is going to deny the motion. It is a simple OUIL case, and I am sure Counsel [Ambrose] has tried many cases on OUIL and, therefore, this case will go when scheduled and I will not issue a Stay.

Ambrose represented defendant at her four-day jury trial, which concluded on October 25, 2001, with her conviction of the lesser included offense of operating a vehicle while visibly impaired by intoxicating liquor, MCL 257.625(3). Defendant was sentenced on November 27, 2001, as a third offender, MCL 257.625(10)(c), to two years' probation, 183 days in jail, and various fines and costs. She now appeals by right.

Michigan's Constitution guarantees that in "every criminal prosecution, the accused shall have the right . . . to have the assistance of counsel for his or her defense . . . ." Const 1963, art 1, § 20. The Sixth Amendment of the United States Constitution directly guarantees that in "all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence," and is applied to the states through the Fourteenth Amendment right to due process. *People v Marsack*, 231 Mich App 364, 372-373; 586 NW2d 234 (1998). Because "the language of the federal constitution and that of the Michigan Constitution are nearly identical," *People v Reichenbach*, 459 Mich 109, 118; 587 NW2d 1 (1998), a " 'compelling reason' " must exist to justify finding that the

Michigan Constitution affords greater protection than its federal counterpart, *id.* (citation omitted). Thus, a defendant's right to counsel under Const 1963, art 1, § 20 is generally the same as that guaranteed by the Sixth Amendment. *Reichenbach, supra* at 119-120; *Marsack, supra* at 373.

Whether a defendant's constitutional right to counsel includes the right to retain out-of-state counsel to defend against a criminal charge in Michigan is a question of law that we review de novo. *People v Sierb*, 456 Mich 519, 522; 581 NW2d 219 (1998). In this case of first impression in Michigan, we hold that a trial court may not arbitrarily and unreasonably refuse to grant admission pro hac vice of an otherwise qualified out-of-jurisdiction attorney. To do so violates the defendant's right to counsel guaranteed by both the Sixth Amendment and Michigan's Constitution. Const 1963, art 1, §§ 13, 20; *People v Arquette*, 202 Mich App 227, 231; 507 NW2d 824 (1993); *Wilson v Mintzes*, 761 F2d 275, 278-280 (CA 6, 1985). Further, we hold that the arbitrary and unreasonable denial of counsel of choice is structural constitutional error mandating automatic reversal. *People v Johnson*, 215 Mich App 658, 666-669; 547 NW2d 65 (1996); *Wilson, supra* at 283-284, 286.

The Sixth Amendment guarantees an accused the right to retain counsel of choice. See *Powell v Alabama*, 287 US 45, 53; 53 S Ct 55; 77 L Ed 158 (1932) ("It is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice."). The United States Court of Appeals for the Sixth Circuit summarized the various facets of the Sixth Amendment right to counsel, including the right

to retain counsel of choice, in *Wilson, supra* at 278-279:

> While the plain language of the amendment simply guarantees a defendant "the Assistance of Counsel for his defence," such language encompasses a guarantee of the right to self-representation, *Faretta v. California,* 422 U.S. 806; 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1974), the right of indigents to appointed counsel in felony prosecutions, *Gideon v. Wainwright,* 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963), and the right to effective assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 1449 n. 14, 25 L. Ed. 2d 763 (1970); *Birt v. Montgomery,* 725 F.2d 587, 592 (11th Cir. 1984) *(en banc)* (sixth amendment right to counsel has four components: right to have counsel, minimum quality of counsel, a reasonable opportunity to select and be represented by chosen counsel, and right to preparation period sufficient to assure minimum quality counsel); *Gandy v. Alabama,* 569 F.2d 1318, 1323 (5th Cir. 1978). Additionally, although much sixth amendment jurisprudence has been concerned with the rights of indigent defendants, an accused who desires to and is financially able "should be afforded a fair opportunity to secure counsel of his own choice." *Powell v. Alabama,* 287 U.S. 45, 53, 53 S. Ct. 55, 58, 77 L. Ed. 158 (1932); *Crooker v. California,* 357 U.S. 433, 439, 78 S. Ct. 1287, 1291, 2 L. Ed. 2d 1448 (1958); *Chandler v. Fretag,* 348 U.S. 3, 10, 75 S. Ct. 1, 5, 99 L. Ed. 4 (1954) ("[A] defendant must be given a reasonable opportunity to employ and consult with counsel; otherwise, the right to be heard by counsel would be of little worth."); *Glasser v. United States,* 315 U.S. 60, 75, 62 S. Ct. 457, 467, 86 L. Ed. 680 (1942) ("Glasser wished the benefit of the undivided assistance of counsel of his own choice. We think that such a desire on the part of an accused should be respected."); *Urquhart v. Lockhart,* 726 F.2d 1316, 1319 (8th Cir. 1984); *United States v. Burton,* 584 F.2d 485, 488-89 (D.C. Cir. 1978), *cert. denied,* 439 U.S. 1069, 99 S. Ct. 837, 59 L Ed [2d] 34 (1979) ("An essential element of the Sixth Amendment's protection of the right to the assistance of counsel is that a defendant must be

afforded a reasonable opportunity to secure counsel of his own choosing."). *Contra Rubio v. Estelle*, 689 F.2d 533, 535 (5th Cir. 1982). Therefore, "[w]hen a court unreasonably denies defendant counsel of choice, the denial can rise to the level of a constitutional violation." *Birt*, 725 F.2d at 592; *United States v. James*, 708 F.2d 40, 44 (2d Cir. 1983). The denial of an accused's right to counsel of his choice "may so offend our concept of the basic requirements of a fair hearing as to amount to a denial of due process of law contrary to the Fourteenth Amendment . . . ." *Glasser*, 315 U.S. at 70, 62 S. Ct. at 464.

The court in *Wilson, supra* at 279, observed the history of upholding the right to retain counsel of choice in the Sixth Circuit, citing and quoting in particular, *Linton v Perini*, 656 F2d 207, 209 (CA 6, 1981) (" 'The right to choose one's own counsel is an essential component of the Sixth Amendment because, were a defendant not provided the opportunity to select his own counsel at his own expense, substantial risk would arise that the basic trust between counsel and client, which is a cornerstone of the adversary system, would be undercut.' "). The *Wilson* Court concluded, "Conceding that an accused has the right to assistance of counsel at trial as well as the fundamental and personal nature of that right, it is clear that when an accused is financially able to retain an attorney, the choice of counsel to assist him rests ultimately in his hands and not in the hands of the State." *Wilson, supra* at 279-280.

Similarly, Michigan courts have long recognized that the accused's right to retain counsel of choice is an essential element of the right to counsel. In *People v Williams*, 386 Mich 565, 578; 194 NW2d 337 (1972), our Supreme Court held that the trial court abused its discretion by refusing to grant a continuance to per-

mit the defendant to procure substitute counsel for existing counsel with whom the defendant had developed a difference of opinion regarding whether to proceed with an alibi defense. Our Supreme Court noted that the constitutional right to counsel "has been jealously protected by the courts and is of critical importance to any defendant in a criminal trial," and when asserted, "the trial court must take special care to insure that it is protected." *Id.* at 576. Michigan specifically guarantees a criminal defendant the right to retain counsel of choice in Const 1963, art 1, § 13 ("A suitor in any court of this state has the right to prosecute or defend his suit, either in his own proper person or by an attorney."), and by statute, MCL 763.1 ("On the trial of every indictment or other criminal accusation, the party accused shall be allowed to be heard by counsel and may defend himself . . . ."). *People v Adkins (After Remand)*, 452 Mich 702, 720 n 14; 551 NW2d 108 (1996); *Arquette, supra* at 231. See also *People v Sinistaj*, 184 Mich App 191, 201; 457 NW2d 36 (1990) ("defendant was asserting his constitutional right to counsel of his own choosing"), and *People v Portillo*, 241 Mich App 540, 542; 616 NW2d 707 (2000) ("A defendant who can afford to retain counsel on his own cannot have that right restricted by the courts.").

Moreover, Const 1963, art 1, § 13 not only guarantees an accused the right to retain counsel of choice, *Peoples v Brown*, 77 Mich App 115, 118; 258 NW2d 66 (1977), but also assures the closely related right of self-representation, *Adkins, supra,* and the right to present a defense, *People v Kurr*, 253 Mich App 317, 326; 654 NW2d 651 (2002). The constitutional right to present a defense is intimately related to the right to

choose how that defense is presented by guaranteeing the choice of retained counsel or self-representation. "An accused's right to counsel of choice, like the right to choose self-representation, is part of an accused's right under the [S]ixth [A]mendment to choose the manner in which he will present his defense. The right is personal to the accused and is protected independent of our concerns regarding the fairness of the proceeding." *Wilson, supra* at 279 n 5, citing *Faretta, supra* at 834.

However, the right to counsel of choice is not absolute. *People v Krysztopaniec,* 170 Mich App 588, 598; 429 NW2d 828 (1988); *Wilson, supra* at 280. Instead, the Sixth Amendment carries with it only a presumption favoring a defendant's counsel of choice. *Wheat v United States,* 486 US 153, 164 (Rehnquist, J.), 165 (Marshall, J.); 108 S Ct 1692; 100 L Ed 2d 140 (1988). "A balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice is done in order to determine whether an accused's right to choose counsel has been violated." *Krysztopaniec, supra* at 598, citing *Wilson, supra* at 280.

In *Wheat, supra,* the United States Supreme Court analyzed the right to counsel of choice embodied in the Sixth Amendment in light of the amendment's protection of the right to effective assistance of counsel, *McMann v Richardson,* 397 US 759, 771 n 14; 90 S Ct 1441: 25 L Ed 2d 763 (1970), and noted that the right to effective assistance of counsel is intended " 'simply to ensure that criminal defendants receive a fair trial,' " *Wheat, supra* at 159, quoting *Strickland v Washington,* 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984). The Court concluded, "[W]hile the right

to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Id.* The *Wheat* Court held that the district court did not abuse its discretion by denying the defendant's choice of counsel who already represented two other codefendants in the same complicated conspiracy case because a serious potential conflict of interest existed. *Id.* at 164. Thus, the presumption in favor of a defendant's choice of retained counsel may be limited by other important interests, including not permitting the appearance of "an advocate who is not a member of the bar" to represent another. *Id.* at 159.

The regulation and licensing of lawyers, and hence the determination of who may practice law in state courts, are exclusively within the authority of the various states. *Leis v Flynt*, 439 US 438, 442; 99 S Ct 698; 58 L Ed 2d 717 (1979); *Ginger v Wayne Co Circuit Court*, 372 F2d 621, 625 (CA 6, 1967) ("The courts of the State of Michigan have exclusive jurisdiction over the admission of attorneys, the regulation of the practice of law, and the discipline and disbarment of attorneys, so far as the practice of law in the state courts is concerned."). Although the United States Supreme Court in *Leis* held that an out-of-state lawyer possessed no interest protected by the Due Process Clause of the Fourteenth Amendment to appear pro hac vice in an Ohio court (to defend Larry Flynt and *Hustler Magazine*), the Court did not address whether the constitutional rights of Flynt and *Hustler Magazine* to retain out-of-state counsel had

been violated. *Leis, supra* at 442 n 4. The Court also recognized that "the practice of courts in most States is to allow an out-of-state lawyer the privilege of appearing upon motion, especially when he is associated with a member of the local bar," and observed that in light of "the high mobility of the bar, and also the trend toward specialization, perhaps this is a practice to be encouraged." *Id.* at 441-442.

In Michigan, our Supreme Court governs the practice of law directly and indirectly through the State Bar of Michigan. MCL 600.901; MCL 600.904. The admission of out-of-state counsel to practice pro hac vice is regulated by State Bar Rule 15, § 2, which provides:

> Any person who is duly licensed to practice law in another state or territory, or in the District of Columbia, of the United States of America, or in any foreign country, may be permitted to engage in the trial of a specific case in a court or before an administrative tribunal in this state when associated with and on motion of an active member of the State Bar of Michigan who appears of record in the case. Such temporary permission may be revoked by the court summarily at any time for misconduct.

Michigan courts have allowed the admission of out-of-state lawyers to practice pro hac vice for over one hundred years. 1895 PA 205, as amended by 1897 PA 93, as quoted in *Tonella v Kaufman*, 328 Mich 412, 416; 43 NW2d 911 (1950), provided:

> "Sec. 2. Practicing attorneys residents of other States and Territories, or from foreign countries, may be admitted on motion to try cases in any of the courts of this State by such courts, but shall not be admitted to the general practice of law in this State without complying with the provisions of this act . . . ."

In *Johnson v DiGiovanni*, 347 Mich 118, 129; 78 NW2d 560 (1956), our Supreme Court held that a Texas judgment obtained pursuant to a Texas statute conferring jurisdiction upon even a limited appearance by the defendant's Michigan attorney was entitled to full faith and credit. The Court observed that "[t]he customary practice in the 48 States is to allow appearance of nonresident attorneys in a particular case *ex gratia*—as a matter of courtesy." *Id.* at 127. The Court cited 1948 CL 601.49 (CLS 1954, § 601.50), and also noted, "the statutes pertaining to admission to the bar in most States, including Michigan, authorize such authority in their various courts of record." *DiGiovanni, supra* at 127. The cited statute provided:

> Any practicing attorney resident of another state or territory of the United States or of a foreign country may be admitted on motion, by the court, to try a certain case in such court; but shall not be admitted to the general trial of cases in such court or to the general practice of the law in this state without complying with the provisions of this chapter. [1948 CL 601.49; originally § 1 of 1913 PA 314, repealed by 1961 PA 236 (Revised Judicature Act).]

Because Michigan has chosen to permit out-of-jurisdiction attorneys to appear and practice in our courts, the judiciary may not deny a defendant's counsel of choice by an arbitrary and unreasonable denial of a motion for admission pro hac vice. US Const, Am VI; Const 1963, art 1, §§ 13, 20; *Portillo, supra* at 542-543; *Arquette, supra* at 231. Just as the trial court may not exercise its discretion in an arbitrary and unjustified manner to remove a defendant's appointed or retained counsel, *Johnson, supra,* 215 Mich App at 665-666, so too a trial court may not arbitrarily and unreasonably deny a defendant's choice to retain out-

of-state counsel, *Portillo, supra* at 542. Of course, a defendant's constitutional right to counsel of choice, including a chosen out-of state counsel, may be denied where the defendant's right is outweighed by the public's interest in the fair, prompt, and efficient administration of justice. *Krysztopaniec, supra* at 598. Further, counsel admitted to practice pro hac vice are subject to the discipline of the court, *People v Bruinsma,* 34 Mich App 167, 177; 191 NW2d 108 (1971), and removal may be justified for gross incompetence, physical incapacity, or contumacious conduct, *Arquette, supra,* citing *People v Crawford,* 147 Mich App 244, 249; 383 NW2d 172 (1985). We review for an abuse of discretion a trial court's exercise of discretion affecting a defendant's right to counsel of choice. *People v Echavarria,* 233 Mich App 356, 368; 592 NW2d 737 (1999). An abuse of discretion occurs when the result is so contrary to fact and logic that it demonstrates perversity of will, defiance of judgment, or an exercise of passion or bias. *Id.*

Our conclusion that the arbitrary refusal to admit retained counsel pro hac vice violates the Sixth Amendment is supported by the majority of federal and state jurisdictions that have considered the question. The United States Court of Appeals for the First Circuit explained that the "Sixth Amendment right to effective assistance of counsel encompasses the corollary, qualified right of defendants to be represented by counsel of their choice," and therefore, "a decision denying a *pro hac vice* admission necessarily implicates constitutional concerns." *Panzardi-Alvarez v United States,* 879 F2d 975, 980 (CA 1, 1989). In *Fuller v Diesslin,* 868 F2d 604 (CA 3, 1989), the court considered a habeas corpus application where a New

Jersey trial court had denied admission pro hac vice of two out-of-state lawyers, reasoning that local counsel was competent and out-of-state lawyers presented an unacceptable risk of trial delay. The court analyzed the constitutional right to counsel of choice as follows:

> New Jersey advances no argument why, and we see no reason why, a request for counsel *pro hac vice* should be treated any differently by a trial court than any other request for counsel of choice. . . . Thus, we conclude that the right to counsel *pro hac vice* is encompassed analytically within the right to counsel of choice, and as such should be examined within the analytic framework generally employed in right to counsel of choice cases. [*Id.* at 607.]

The court concluded:

> [T]he mere fact that a defendant's sixth amendment right to counsel of choice encompasses the right to request counsel *pro hac vice* does not necessarily require the courts to approve the request in every instance. Rather, it creates a presumption that the defendant's request should be granted unless considerations of judicial administration supervene. [*Id.* at 607 n 3.]

See also *United States v Walters*, 309 F3d 589, 592 (CA 9, 2002), holding that a defendant's Sixth Amendment right to the counsel of his choice includes the right to have an out-of-state lawyer admitted pro hac vice "unless some countervailing consideration outweighs the defendant's constitutional interest." Thus, " '[a] criminal defendant's exercise of this right cannot unduly hinder the fair, efficient and orderly administration of justice.' " *Id.*, quoting *United States v Panzardi-Alvarez*, 816 F2d 813, 816 (CA 1, 1987).

Most of the authority the prosecutor cites are examples where the trial court was justified in denying admission of counsel pro hac vice, or was justified in removing out-of-jurisdiction counsel. For example, see *Williams v State*, 157 Ga App 494; 277 SE2d 781 (1981) (the trial court did not abuse its discretion by denying pro hac vice motion where the out-of-state lawyer could not prove admission to the bar of his claimed home state of Texas), and *State v Kavanaugh*, 52 NJ 7; 243 A2d 225 (1968) (egregious conduct of counsel admitted pro hac vice justified removal in the interests of the integrity of the judicial process). See also *Thomas v Cassidy*, 249 F2d 91, 92 (CA 4, 1957) (the trial court did not abuse its discretion in denying pro hac vice motion where the out-of-state lawyer had been "guilty of unlawyerlike conduct in connection with the case in which he wished to appear and which was being prosecuted by his sister as plaintiff"), and *Ross v Reda*, 510 F2d 1172, 1173 (CA 6, 1975) (the trial court was justified in refusing admission pro hac vice where the out-of-state lawyer affirmatively refused to limit his out-of-court statements concerning the case while it was pending).

In the present case, defendant's motion to admit counsel of choice pro hac vice was brought well in advance of trial, and no basis appears in the record to conclude that out-of-state counsel was not otherwise qualified. The only reasons the trial court advanced for denying the motion were that the instant matter was a "simple OUIL case" and local counsel was competent. The latter reason we find insufficient to deny a defendant's constitutional right to counsel of choice. See, e.g., *Ross, supra* at 1173, where the court opined that the defendant's Sixth Amendment right "is

modified significantly by the actual availability and presence of other competent counsel," but the defendant's motion for admission of out-of-state counsel pro hac vice in *Ross* was denied because out-of-state counsel would not agree to be bound by Ohio ethical standards concerning out-of-court statements. Further, because all counsel are presumed competent, *Strickland, supra* at 690, a denial of counsel of choice on this basis would permit violation of the constitutional right to counsel of choice without providing a remedy except in the coincidental event that the defendant also was denied effective assistance of counsel.

We also must reject the notion that an OUIL case is simple. First, although OUIL cases may be commonly tried and straightforward procedurally, they are significant. Driving while under the influence of intoxicating liquor takes its annual toll in death and destruction on our highways, and the Legislature has seen fit to require that the judiciary impose serious consequences for violation of the laws prohibiting such conduct. Second, the trial court's reason for denying the motion reverses the presumption in favor of allowing a defendant to retain counsel of choice. A defendant has no obligation to prove a need for out-of-state counsel; it is the trial court's burden to justify that its exercise of discretion in denying a motion was in the interest of the fair, prompt, and efficient administration of justice. *Krysztopaniec, supra* at 598; *Panzardi-Alvarez, supra,* 816 F2d at 816. Third, while the seriousness of the offense and the potential for incarceration may limit a defendant's right to appointed counsel, *Reichenbach, supra* at 115-116, a defendant who can afford to retain counsel on his

own "cannot have that right restricted by the courts," *Portillo, supra* at 542. Therefore, we conclude that the trial court abused its discretion by denying defendant her constitutional right to counsel of choice. *Id.*; *Echavarria, supra* at 368.

Having found that the trial court arbitrarily and unreasonably denied defendant's right to retain counsel of choice guaranteed by the Sixth Amendment and Michigan's Constitution, we also conclude that the error requires automatic reversal. *Johnson, supra,* 215 Mich App at 666-669; *Wilson, supra* at 281 ("Evidence of unreasonable or arbitrary interference with an accused's right to counsel of his choice ordinarily mandates reversal without a showing of prejudice."). We hold that the arbitrary and unreasonable denial of counsel of choice, as in this case, is structural constitutional error mandating automatic reversal. *People v Anderson (After Remand),* 446 Mich 392, 405; 521 NW2d 538 (1994). In *Anderson,* our Supreme Court, following *Chapman v California,* 386 US 18, 24; 87 S Ct 824; 17 L Ed 2d 705 (1967), and *Arizona v Fulminante,* 499 US 279, 306-310; 111 S Ct 1246; 113 L Ed 2d 302 (1991), defined a structural constitutional error as one that constitutes a defect in the constitution of the trial mechanism itself rather than an error in the conduct of the trial, which is amenable to harmless-error analysis in light of the quantum and strength of the untainted evidence. *Anderson, supra* at 405-406, citing *Fulminante, supra* at 307-308, and *Chapman, supra* at 23. Although not a complete denial of counsel at a critical stage of a criminal proceeding, which is structural error mandating automatic reversal, *Gideon v Wainwright,* 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963); *People v Russell,* 254

Mich App 11, 18; 656 NW2d 817 (2002), our holding in *Johnson, supra*, clearly applies to the denial of counsel of choice in the case at bar:

> The present case does not involve a trial error that occurred during the presentation of the case to the jury. Rather, it involves a structural error that infected the entire trial mechanism because defendant's Sixth Amendment right to counsel was violated by the trial court by it[s] removal of Hess before trial began. As *Anderson* instructs, a harmless-error analysis is not applicable to the improper removal of appointed trial counsel, a Sixth Amendment violation [*Johnson, supra*, 215 Mich App at 667.]

We find that there is no analytical difference between the arbitrary removal of appointed counsel before trial and the arbitrary refusal to permit appearance of counsel of choice before trial. In each case, the denial of the accused's constitutional right to counsel of choice is simply not amenable to the same type of analysis as a claim of ineffective assistance of counsel. *Wilson, supra* at 279 n 5. "The right [to counsel of one's choice] is personal to the accused and is protected independent of our concerns regarding the fairness of the proceeding." *Id.* In contrast, when ineffective assistance of counsel is asserted, discrete alleged trial errors by counsel may be weighed against the rest of the trial evidence to determine if the alleged error was prejudicial or outcome-determinative. *People v Toma*, 462 Mich 281, 302-303; 613 NW2d 694 (2000). In essence, denial of counsel of choice is a denial of the manner in which a defense will be presented, not a denial of the substance of the defense itself, and, therefore, closer analytically to a denial of the right of self-representation, *Faretta, supra*, which mandates automatic reversal, *Fulmi-*

*nante, supra* at 310, citing *McKaskle v Wiggins,* 465 US 168, 177-178 n 8; 104 S Ct 944; 79 L Ed 2d 122 (1984). "Obtaining reversal for violation of such a right [to counsel of one's choice] does not require a showing of prejudice to the defense, since the right reflects constitutional protection of the defendant's free choice independent of concern for the objective fairness of the proceeding." *Flanagan v United States,* 465 US 259, 268; 104 S Ct 1051; 79 L Ed 2d 288 (1984).

In sum, we reject the prosecutor's argument that defendant must establish the type of prejudice pertinent to claims of ineffective assistance of counsel. *Strickland, supra* at 687-688. Instead, we conclude that the arbitrary denial of counsel of choice is simply not amenable to such analysis, and prejudice must be presumed. *Id.* at 692; *Johnson, supra,* 215 Mich App at 669-670.

Defendant also argues that the trial court erred by admitting during cross-examination of her expert, Dr. Charles Simpson, the results of a preliminary breath test in violation of MCL 257.625a(2)(b). The prosecutor admits that the admission of the test results on cross-examination of a defense witness did not comply with the plain language of MCL 257.625a(2)(b)(iii), which permits such evidence "if offered by the prosecution to rebut testimony elicited on cross-examination of a prosecution witness that the defendant's breath alcohol content was lower at the time of the charged offense than when a chemical test was administered . . . ." The prosecutor, however, argues that any error in admitting the test results does not warrant reversal because it does not affirmatively appear more probable than not that the admission of

the evidence was outcome-determinative. *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). Because we have concluded that the constitutional error requires reversal, this evidentiary issue is moot. *People v Mutchie*, 251 Mich App 273, 274; 650 NW2d 733 (2002), aff'd 468 Mich 50 (2003).

We vacate defendant's conviction and sentence and remand this matter to the trial court. We do not retain jurisdiction.