# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

OBIE CARTER IV,

        Defendant-Appellant.

UNPUBLISHED
December 10, 2015

No. 322875
Wayne Circuit Court
LC No. 14-002097-FC

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMES HENRY TOWNSEND II,

        Defendant-Appellant.

No. 322880
Wayne Circuit Court
LC No. 14-002094-FC

Before: KRAUSE, P.J., and MARKEY and M. J. KELLY, JJ.

PER CURIAM.

Defendants Obie Carter IV and James Townsend II were tried jointly but before separate juries. Carter's jury convicted him of first-degree premeditated murder, MCL 750.316(1)(a), felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, MCL 750.227b. Townsend was also convicted of first-degree premeditated murder. The trial court sentenced Carter to life imprisonment without parole for the murder conviction and a concurrent prison term of 38 months to 5 years for the felon-in-possession conviction, both consecutive to a two-year term of imprisonment for the felony-firearm conviction. The trial court sentenced Townsend to life imprisonment without parole for his murder conviction. Both defendants appeal by right. We affirm in both appeals.

Defendants' convictions arise from the February 23, 2014, shooting death of Tairaz Harris, who was shot multiple times on a dark residential street in Detroit. There were no eyewitnesses to the shooting, but a resident heard the shots and then saw a sport utility vehicle (SUV) leave the scene. Harris and defendant Carter had been close friends and were at a casino

-1-

together on the day Harris was shot. Carter lost all of his money, but Harris won $5,000. Carter was the last person seen with Harris. Harris's money and wallet were missing when the police checked his body.

Carter had borrowed a black SUV from his girlfriend, Taylor Williams. After the shooting, Carter and Townsend asked Williams to drive them to Saginaw, where they dropped off Townsend. Carter and Williams then drove from Saginaw to Williams's apartment in Ann Arbor, where they spent the night. The police arrested Carter the next morning. At the time of his arrest, Carter had more than $5,000 on his person. Carter gave a statement to the police in which he stated that Harris was shot during a "drug deal gone bad."

The prosecution's theory at trial was that Carter shot Harris, while aided and abetted by Townsend, either because Carter believed that Harris had something to do with the death of Carter's cousin, Reggie Moore, or to rob Harris of his money.

## I. EXCLUSION OF INSTAGRAM PHOTOGRAPH

Both defendants argue that the trial court erred by excluding an Instagram photograph depicting Harris with a gun tucked inside the waistband of his pants. Defendants argue, as they did below, that the photo was relevant to either support their theory that Harris was shot during a drug deal, or to impeach the testimony of prosecution witnesses Marketa Smith and LaChonique Evans. We review the trial court's decision to exclude the photo for an abuse of discretion. *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id*.

Relevant evidence is generally admissible. MRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. As explained in *Musser*, 494 Mich at 355, quoting *People v Crawford*, 458 Mich 376, 388, 390; 582 NW2d 785 (1998):

> Determining whether a statement is relevant requires a trial court to carefully scrutinize whether the statement is both material—i.e., "offered to help prove a proposition which is . . . a matter in issue"—and probative—i.e., "tends to make the existence of any fact that is of consequence to the determination of the action more probable . . . than it would be without the evidence."

We agree with the trial court that the photograph was not relevant to their theory that Harris was shot during a drug deal. First, there was no evidence suggesting that Harris was armed at the time he was shot, or that he was shot in self-defense. Second, the photo was not probative of whether Harris was participating in a drug deal when he was shot. Whether Harris was known to carry a gun simply did not have a tendency to make it more probable that he met someone for a drug deal. While drug dealers are known to carry guns, it cannot be said that a person who carries a gun is likely to participate in a drug deal. Therefore, the trial court did not abuse its discretion by ruling that the photo was not relevant to support the defense theory that Harris was shot during a drug deal.

We also disagree with defendants' argument that the photo was relevant to impeach the testimony of Marketa Smith. Although Smith was asked about Harris's involvement with drugs and denied that he was involved in selling or buying drugs, she was never asked if she had ever seen Harris with a gun. Smith's testimony that Harris was "[c]lean as a whistle" was made in response to questions involving Harris's involvement with drugs. Harris's sister, LaChonique Evans, similarly was not asked if she had ever seen Harris with a gun; instead, she too was only asked about his possible drug use or dealing. Because the witnesses never denied that Harris had a gun, the photo was not relevant as impeachment evidence.

We find no merit to defendants' argument that the trial court made inconsistent rulings because it allowed the prosecutor to admit evidence from Townsend's Facebook page. The trial court's two evidentiary rulings were based on the substantive relevancy of the proffered evidence. The mere fact that the court admitted evidence from one social media website and excluded evidence obtained from another website does not reflect disparate rulings or treatment.

In sum, the trial court did not abuse its discretion by excluding the proffered photographic evidence.

## II. CARTER'S REMAINING ISSUES IN DOCKET NO. 322875

### A. DISCOVERY

Carter argues that the prosecution suppressed exculpatory evidence when it failed to produce Harris's cell phone records. At trial, Carter elicited testimony that the police obtained Harris's cell phone records and did not present them to the defense; however, the record fails to disclose that Carter requested the records or objected to their nonproduction. Therefore, this issue is unpreserved and our review is limited to plain error affecting Carter's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Carter argues that the prosecution's failure to produce Harris's telephone records amounted to a *Brady*[1] violation. To establish a violation under *Brady*, a defendant must show that (1) the prosecution suppressed evidence; (2) the evidence is favorable to the accused, and (3) viewed in its totality, the evidence is material. *People v Chenault,* 495 Mich 142, 155; 845 NW2d 731 (2014). Carter cannot complain that the evidence was suppressed when he was aware of it at trial because the essence of a *Brady* violation is the prosecution's failure to disclose favorable evidence unknown to the defense. *Id*. at 150, 153; see also *Strickler v Greene*, 527 US 263, 281-282; 119 S Ct 1936; 144 L Ed 2d 286 (1999). Indeed, it appears that defense counsel strategically did not request Harris's cell phone records because he argued at trial that the failure to produce the records showed that the police and prosecution were attempting to hide something. Moreover, to establish a *Brady* violation, a defendant must also show that the evidence was material and favorable to the defendant. Carter merely speculates that the records contain exculpatory information; he has not presented any evidence that the records actually

---

[1] *Brady v Maryland,* 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

-3-

contain material information favorable to the defense. Therefore, Carter has failed to establish a *Brady* violation.

## B. JURY INSTRUCTIONS

Next, Carter argues that a new trial is required because of instructional error. He argues (1) that the evidence did not support a flight instruction, and (2) that it was improper for the trial court to comment on the parties' stipulation that Carter was ineligible to possess a firearm when it was instructing the jury on the elements of felon in possession of a firearm. Although Carter objected to the flight instruction, he did not object to the trial court's comment about the parties' stipulation. Therefore, only the first claim of instructional error is preserved. Jury instructions that involve questions of law are reviewed de novo, but a trial court's determination whether a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). An unpreserved claim of instructional error is reviewed for plain error affecting substantial rights. *People v Kowalski*, 489 Mich 488, 505-506; 803 NW2d 200 (2011).

Carter argues that the trial court erred in instructing the jury on flight because there was no evidence to support the instruction. We disagree. The term "flight" has been applied to such actions as fleeing the scene of the crime, leaving the jurisdiction, resisting arrest, attempting to escape custody, and running from the police. *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). "Such evidence is probative because it may indicate consciousness of guilt, although evidence of flight by itself is insufficient to sustain a conviction." *Id.*

The evidence showed that after the shooting, Carter and Townsend both asked Williams to drive them to Saginaw. Williams's testimony indicated that the request was unexpected, and the circumstances supported an inference that both defendants wanted to quickly leave the area of the shooting. After dropping Townsend off in Saginaw, Carter and Williams drove to Williams's apartment in Ann Arbor. While Carter asserts that he had planned to spend the night in Ann Arbor with Williams before Harris was shot, evidence was presented that he stopped at another house to get a duffle bag of his belongings before the trip to Saginaw. That behavior called into question whether he originally intended to spend the night in Ann Arbor, or whether he intended to stay there or elsewhere longer than originally intended because of his involvement in the shooting. The trial court did not abuse its discretion in determining that the facts supported a flight instruction and letting the jury decide whether Carter left Detroit for innocent reasons, or because of consciousness of guilt arising from his involvement in the charged offense.

Carter also argues that the trial court erred when it referred to the parties' stipulation regarding Carter's ineligibility to possess a firearm when instructing the jury on the elements of felon in possession of a firearm. The trial court instructed the jury, in relevant part:

> The final count that applies only to defendant Carter is the charge of having possessed or used a firearm in this state after having been convicted of a felony. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt: First, that the defendant possessed or used a firearm in this state.

Second, that at the time he allegedly possessed or used a firearm in the State he was ineligible to do so due to a prior felony conviction.

*It is stipulated, that means agreed, that the defendant Carter was ineligible to possess a firearm on the day in question.* [Emphasis added.]

Carter contends that the trial court should have mentioned the stipulation only in an impartial summary of the facts, as indicated in MCR 2.513(M), which provides:

After the close of the evidence and arguments of counsel, the court may fairly and impartially sum up the evidence if it also instructs the jury that it is to determine for itself the weight of the evidence and the credit to be given to the witnesses and that jurors are not bound by the court's summation. The court shall not comment on the credibility of witnesses or state a conclusion on the ultimate issue of fact before the jury.

Carter notes that the trial court later instructed the jury generally on stipulations, consistent with M Crim JI 4.7, stating:

Stipulation. That's an agreement. When the lawyers agree on a statement of facts, these are called stipulated facts. You may regard such stipulated facts as true but you are not required to do so.

Carter has not provided any authority for his argument that it was improper for the trial court to refer to the parties' stipulation when instructing on the elements of felon in possession of a firearm. The comment accurately recited the parties' stipulation, and the court later properly instructed the jury on the effect of a stipulation in accordance with M Crim JI 4.7. Accordingly, there is no plain error. Furthermore, because the court's comment during the felon-in-possession instruction did not inform the jury that it was required to regard the stipulated facts as true, and the jury was also instructed that it was to decide whether to follow a stipulation, the court's comment did not affect Carter's substantial rights.

## III. TOWNSEND'S REMAINING ISSUES IN DOCKET NO. 322880

### A. NEW COUNSEL

Townsend argues that the trial court erred when it denied his request to adjourn trial so that he could retain new counsel. We review a trial court's decision regarding a defendant's right to counsel of choice for an abuse of discretion. *People v Akins*, 259 Mich App 545, 556; 675 NW2d 863 (2003).

Just before jury selection began in Townsend's case, the trial court stated that it had received a letter from Townsend the day before asking for more time to find another attorney. Contrary to what Townsend argues, the trial court allowed Townsend to explain his reasons for seeking new counsel. Townsend complained he and his mother were uncomfortable with defense counsel because counsel did not pay attention during meetings, had not provided all of the discovery materials, and failed to address unspecified matters. Townsend admitted that he had met with his attorney at least four times. Townsend indicated that he had met a new attorney

-5-

who was willing to take his case, but only if the trial court granted an adjournment to give the attorney time to prepare. The trial court denied the request for an adjournment because Townsend had waited until the start of trial to make the request and because Townsend failed to articulate a sufficient basis for his dissatisfaction with appointed counsel.

In *Akins*, 259 Mich App at 557, this Court explained:

"The Sixth Amendment guarantees an accused the right to retain counsel of choice." [*People v Fett*, 257 Mich App 76, 80; 666 NW2d 676, vacated and remanded on different grounds 469 Mich 907 (2003).] "However, the right to counsel of choice is not absolute." *Id*. at 84. " 'A balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice is done in order to determine whether an accused's right to choose counsel has been violated.' " *Id*., quoting *People v Krysztopaniec*, 170 Mich App 588, 598; 429 NW2d 828 (1988).

> When reviewing a trial court's decision to deny a defense attorney's motion to withdraw and a defendant's motion for a continuance to obtain another attorney, we consider the following factors: (1) whether the defendant is asserting a constitutional right, (2) whether the defendant has a legitimate reason for asserting the right, such as a bona fide dispute with his attorney, (3) whether the defendant was negligent in asserting his right, (4) whether the defendant is merely attempting to delay trial, and (5) whether the defendant demonstrated prejudice resulting from the trial court's decision. [*People v Echavarria*, 233 Mich App 356, 369; 592 NW2d 737 (1999).]

Applying these principles, this Court concluded that the trial court did not abuse its discretion by denying the defendant's request for an adjournment to allow him to retain new counsel, stating:

> In the present case, approximately one month before the trial, Akins wrote a letter to the trial judge requesting that he be allowed to dismiss his appointed attorney. Akins asserted general claims that his attorney was not competently representing him and specifically protested that his attorney had not filed a motion to have a separate jury from his codefendants. Akins also informed the trial judge that he sought to retain a new attorney to represent him at trial, but that the attorney he sought to retain had another trial on the date of Akins's trial. Therefore, Akins requested that his trial be adjourned.

> At a hearing approximately 2-1/2 weeks before trial, Akins again requested that he be allowed to dismiss his appointed attorney because his attorney was not good enough to represent him and because he disapproved of his attorney's talking with the prosecutor. Akins again informed the trial court that the attorney he sought to retain had a schedule conflict with defendant's trial date. The trial court informed Akins that he was free to retain a new attorney, but that he would not adjourn the trial.

The trial court did not abuse its discretion in denying the request by Akins for an adjournment to accommodate the counsel he sought to retain. The trial court was willing to grant the request made by Akins to dismiss his appointed counsel. The only constraint placed on Akins was that he would not be granted an adjournment of the trial. Akins was free to retain any attorney he wanted, as long as that attorney could be present for the scheduled trial date. The trial court's reluctance to adjourn the trial was reasonable, given that Akins was to be tried jointly with Mitchell. Thus, it would have been a heavy burden on the trial court and the other attorneys to adjourn the trial. We therefore conclude that Akins was not denied his right to retain counsel of his choice. Further, the trial court did not abuse its discretion in denying Akins's request for an adjournment of the trial. [*Akins*, 259 Mich App at 557-559 (footnotes omitted).]

The circumstances of this case are factually similar to those in *Akins*, except that Townsend waited even longer before requesting an adjournment. The trial court accurately summarized Townsend's complaints as merely not "feeling comfortable" with his attorney. Townsend admitted that he had met with counsel at least four times. Townsend did not identify any fundamental disagreements or bona fide disputes with his attorney, or indicate how he believed his attorney was unprepared or unable to properly represent him at trial. Furthermore, Townsend's request was received a day before trial. An adjournment would have either required the court to also adjourn Carter's trial, or to sever the two cases. Under the circumstances and considering Townsend's failure to bring his concerns to the court's attention earlier and to identify a legitimate, bona fide dispute with his appointed attorney, the trial court did not abuse its discretion by denying Townsend's request for an adjournment to retain new counsel.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Townsend also argues that the trial court erred in denying his motion for a new trial based on ineffective assistance of counsel. Where the trial court finds certain facts in relation to a claim of ineffective assistance of counsel, those findings are reviewed for clear error. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Whether the facts establish ineffective assistance of counsel is a question of constitutional law, which is reviewed de novo. *Id.*

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance fell below an objective standard of reasonableness and that counsel's representation so prejudiced the defendant that he was denied a fair trial. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). The defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *LeBlanc,* 465 Mich at 578. To establish prejudice, the defendant must show that there is a reasonable probability that but for counsel's error, the result of the proceeding would have been different. *Pickens*, 446 Mich at 314; *People v Johnson,* 451 Mich 115, 124; 545 NW2d 637 (1996). The burden is on the defendant to establish factual support for his claim of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Townsend argued in his motion for a new trial that he was denied the effective representation of counsel at trial because his appointed attorney slept through large portions of the trial. Although Townsend alleged that he had witnesses who were willing to support his

claim, he failed to submit any affidavits from these individuals to support his allegations. Townsend also invited the trial court to rely on its own recollection of counsel's representation at trial, but the trial court stated that it did not observe counsel sleeping during the trial. The court did recall that defense counsel suffered from a back problem during trial, which required that he take breaks to stretch his back. However, the court did not find that counsel's condition affected his performance at trial.

The record fails to disclose any instances where Townsend's trial counsel appeared to be inattentive to what was going on at trial. While Townsend claims to have witnesses who can support his position, he failed to submit any affidavits from these witnesses, and counsel's own summary of his conversations with the witnesses indicates that none were able to clearly tell that counsel was actually sleeping during trial. The trial court acknowledged that counsel had a back condition that it attempted to accommodate with appropriate breaks, but stated that it did not observe any instances in which counsel's representation of Townsend was affected by his condition. Townsend likewise fails to identify any specific manner in which his attorney's performance was deficient and prejudiced Townsend's right to a fair trial. Townsend alternatively requests this Court to remand this matter for an evidentiary hearing on this ineffective assistance of counsel claim. But because Townsend has not submitted any affidavits from witnesses who could provide information supporting Townsend's claim that counsel was observed sleeping during trial and has not explained how counsel performed deficiently, he has not established the factual predicate of his claim of ineffective assistance of counsel, *Hoag*, 460 Mich at 6, or that remand for an evidentiary hearing is warranted.

We affirm.

/s/ Amy Ronayne Krause
/s/ Jane E. Markey
/s/ Michael J. Kelly

-8-