PEOPLE v HARRINGTON

Docket No. 239699. Submitted September 4, 2003, at Grand Rapids. Decided October 2, 2003, at 9:10 A.M.

Lawrence W. Harrington, II, was convicted by a jury in the Allegan Circuit Court, George R. Corsiglia, J., of second-degree criminal sexual conduct. Among the evidence admitted were inculpatory statements made by the defendant to the police during an interview that followed a polygraph examination of the defendant arranged by the police after the defendant's arraignment and without the involvement of defendant's counsel. The defendant appealed.

The Court of Appeals *held*:

The admission of evidence of the defendant's inculpatory statements amounted to error requiring reversal. The statements were obtained in violation of the defendant's Sixth Amendment right to counsel because they were the result of police-initiated contact after the defendant was arraigned and trial counsel was appointed for him.

Reversed and remanded for a new trial.

KELLY, J., dissenting, stated that the trial court did not err in denying the defendant's motion to suppress evidence of the inculpatory statements. The defendant knowingly and intelligently waived his Sixth Amendment right to counsel and initiated the postarraignment conversation with the police that led to the voluntary statements by which he incriminated himself.

CONSTITUTIONAL LAW — SIXTH AMENDMENT — RIGHT TO COUNSEL

When a criminal defendant invokes the Sixth Amendment right to counsel, any subsequent waiver of the right in a police-initiated custodial interview is ineffective with respect to the charges filed against the defendant (US Const, Am VI).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Frederick Anderson*, Prosecuting Attorney, and *Douglas E. Ketchum*, Assistant Prosecutor, for the people.

*Sluiter, Agents, Van Gessel, Winther & Carlson* (by *Dennis R. Carlson*) for the defendant.

Before: COOPER, P.J., and FITZGERALD and KELLY, JJ.

COOPER, P.J. A jury convicted defendant Lawrence W. Harrington, II, of second-degree criminal sexual conduct, MCL 750.520c(1)(a). The trial court sentenced defendant to 57 to 180 months' imprisonment for the conviction. He appeals as of right. We reverse and remand for a new trial.

This appeal arises from claims that defendant sexually abused his stepson when his stepson was five years old. The allegations of abuse did not arise for nine years. The complainant made these charges when he was incarcerated as a juvenile for criminal sexual conduct.

On the day of defendant's arraignment, Trooper David Gutierrez visited defendant in jail and spoke with him regarding his *Miranda*[1] rights, the investigation, and the possibility of taking a polygraph examination. Trooper Gutierrez stated that defendant insisted on taking a polygraph to prove his innocence. Defendant was subsequently arraigned later that day and trial counsel was appointed. Almost two weeks after the arraignment, Trooper Gutierrez again visited defendant in jail to ask defendant if he still wanted to take the polygraph. Trooper Gutierrez testified that he asked defendant if he had contacted his attorney regarding the examination. When defendant explained that he had not discussed the examination with his attorney, Trooper Gutierrez claimed that he offered to arrange a meeting. According to Trooper Gutierrez,

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

defendant declined this offer and stated that he did not want his attorney present. Defendant, however, testified that he would have liked the opportunity to discuss the polygraph examination with his trial counsel.

The following day, Trooper Gutierrez and two other officers returned to the jail and transported defendant to the polygraph examination. Before the examination, defendant was read his *Miranda* rights and he signed a standard waiver form. When defendant learned that he failed the examination, Trooper Gutierrez claimed that defendant asked to speak with him about the investigation and repeated this request upon their return to the jail. At this point, Trooper Gutierrez and two other officers agreed to discuss the investigation with defendant in an interview room. The troopers testified that defendant confessed and recanted twice during the interview. Defendant, however, denied asking to speak with the police officers. Rather, defendant testified that it was Trooper Gutierrez who asked him if he wanted to talk about the polygraph results when they returned to the jail. Defendant agreed to speak with the officers at the jail but claimed that he maintained his innocence throughout the interview.

On appeal, defendant argues that the trial court erroneously denied his motion to suppress the postpolygraph interview statements. He maintains that these statements were obtained in violation of his Sixth Amendment right to counsel because they were the result of police-initiated contact after his arraignment and appointment of trial counsel. We agree. A trial court's findings of fact on a motion to

suppress are reviewed for clear error on appeal.[2] "To the extent that a trial court's ruling on a motion to suppress involves an interpretation of the law or the application of a constitutional standard to uncontested facts, our review is de novo."[3]

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." This amendment thus affords an accused the right to rely on counsel as an intermediary between him and the state.[4] When a defendant invokes the Sixth Amendment right to counsel, any subsequent waiver of this right in a *police-initiated custodial interview* is ineffective with respect to the charges filed against the defendant.[5] An exception to this rule exists where the defendant initiates the contact and makes a valid waiver of his rights.[6]

On the instant facts, we are convinced that defendant's statements were obtained in violation of his Sixth Amendment right to counsel. In *People v Anderson*, our Supreme Court suppressed statements that were given under similar circumstances.[7] While the police in *Anderson* initially contacted the defendant regarding a polygraph before his arraignment, they left a telephone message concerning the actual arrangements at the defendant's home after he had

---

[2] *People v Oliver*, 464 Mich 184, 191; 627 NW2d 297 (2001).

[3] *People v Attebury*, 463 Mich 662, 668; 624 NW2d 912 (2001).

[4] *Michigan v Jackson*, 475 US 625, 632; 106 S Ct 1404; 89 L Ed 2d 631 (1986).

[5] *People v McElhaney*, 215 Mich App 269, 273-274; 545 NW2d 18 (1996).

[6] *Id.* at 274.

[7] *People v Anderson (After Remand)*, 446 Mich 392; 521 NW2d 538 (1994).

been arraigned and appointed counsel.[8] After the polygraph was administered, the police reminded the defendant of his *Miranda* rights and proceeded to obtain several damaging statements.[9] These statements were ultimately deemed inadmissible because the defendant did not initiate the postarraignment communication.[10] Similarly, in the instant case, it was the police that contacted defendant regarding the polygraph arrangements. And notably, this visit occurred while defendant was *in jail* and after his arraignment. It is further undisputed that the police knew defendant had been arraigned and appointed counsel at the time of this contact.

To the extent the prosecution claims that defendant reinitiated communication with the police by asking to speak with them after the examination, we disagree. The statements allegedly elicited from defendant were obtained during the course of ongoing contact that was originally initiated by the police. We note that the Supreme Court in *Anderson* did not give much credence to a similar argument when it dismissed the fact that the defendant voluntarily returned the phone call from the police as insufficient to remedy the initial contact problem.[11]

We note our colleague's dissent on the grounds that defendant initiated the conversation with the police. The record, however, clearly indicates that it was the police that first contacted defendant after an undisputed awareness that he had obtained trial counsel. These actions were particularly inappropriate, given

---

[8] *Id.* at 401.
[9] *Id.*
[10] *Id.* at 404.
[11] *Id.*

the Michigan Rules of Professional Conduct that for-
bid attorneys and their agents from communicating
about the subject of the representation with a party
that is represented by opposing counsel.[12]

Given the limited evidence presented in this case of
defendant's guilt and the highly inculpatory nature of
his statements, we do not find that the admission of
defendant's statements amounted to harmless error.[13]
Because we find that this issue is dispositive, we
need not address defendant's remaining claim that his
counsel's failure to move for a directed verdict
amounted to ineffective assistance of counsel.

We reverse and remand for a new trial. We do not
retain jurisdiction.

FITZGERALD, J., concurred.

KELLY, J. *(dissenting)*. I respectfully dissent.
Because no interrogation of defendant occurred until
after defendant initiated further conversations with
the troopers regarding the charged crime, the trial
court properly denied defendant's motion to suppress.

I

After defendant's arrest but before his arraignment,
Trooper Gutierrez spoke briefly with defendant at the
jail. They discussed the nature of the investigation,
defendant was given *Miranda*[1] warnings and defen-
dant was asked to make a statement. According to
the trooper, defendant insisted on taking a polygraph
examination to "prove his innocence." The trooper

---

[12] See MRPC 4.2.

[13] See *Anderson (After Remand)*, *supra* at 404-407.

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

explained to defendant that he would be appointed an attorney at his arraignment later that day and he should speak with this attorney about taking the polygraph examination and get his attorney's opinion as to whether he should take the examination.

After defendant had been arraigned, Trooper Gutierrez again visited defendant at the jail. Trooper Gutierrez testified that the sole purpose of visiting defendant was to determine whether defendant wanted to take the polygraph examination and:

> I asked him if he had talked with his attorney about the polygraph 'cause I had it set up for the following day.

> \*     \*     \*

> He said no, he hadn't, and I asked him why not and he said that the attorney had kept him waiting for 2½ hours in the hallway during a previous contact and never had a chance to communicate with him. I asked if he knew his attorney's name and he did . . . I said do you want me to contact him, I can get him for you right now before we go any further and he said no. He said I don't want him here. I said I can get him here, and he said no, I don't want him here. I said are you sure, and he said yes.

Defendant, however, testified that he did not desire to speak with Trooper Gutierrez, but spoke with him because somebody from the jail told him that he had a visitor without informing him who it was. Trooper Gutierrez informed him that a polygraph examination had been scheduled for the next day and when defendant asked to speak to his attorney first, the trooper said that it would take a long time to reschedule the polygraph, and defendant would have to stay in jail while waiting to take the examination. Defendant did testify that he desired a polygraph to prove his inno-

cence and that before administration of the polygraph examination, Trooper Gutierrez warned defendant that his attorney may recommend that he not take the examination. Further defendant testified:

> *Q.* Did you feel you had a choice in the matter?
>
> *A.* I felt I had a choice, whether I wanted to take it [polygraph examination] or not, yes, but I wanted to take it to prove my innocence because I believed that I was innocent. I know I didn't do this.

The following day, Trooper Gutierrez arrived at the jail with two Michigan State police troopers, Ryan Maki and Mike Jaffery. According to defendant, when Trooper Gutierrez arrived he informed him that they were going to take him to the site of the polygraph and if defendant passed the examination the charges against him would be dropped. Trooper Gutierrez, along with Troopers Maki and Jaffrey, transported defendant to a polygraph examination in Grand Rapids. During the trip, there was no discussion of the charges against defendant and defendant was not questioned in any manner. When they arrived, Michigan State Police Trooper Specialist Ben Escalante again gave defendant his *Miranda* rights. In addition, defendant was provided with a written explanation of his rights, which defendant read and signed. Trooper Escalante then administered the polygraph examination. Defendant was subsequently notified that he failed the examination.

According to Trooper Gutierrez, after the polygraph examination, "a disheveled defendant" said that things did not go well and asked if they could talk about the investigation. In response, Trooper Gutierrez told him to "relax a little while, catch his breath, think about

what happened and if he wanted to talk we'd talk back at the jail." Before returning to the jail, they made a stop at the state police post in Wayland. At the post, Trooper Maki was alone in the car with defendant while Trooper Gutierrez and Trooper Jaffery went inside. According to Trooper Maki, while the other troopers were gone, defendant made an unsolicited statement about how he was upset by the polygraph results and wanted to talk. Trooper Maki did not respond. When Trooper Gutierrez returned with the lead investigator on the case, Trooper Hoffman, they proceeded to take defendant back to the jail. No discussion of the charges occurred during the thirty-five- to forty-mile trip back to the jail.

Trooper Gutierrez stated that upon arriving at the jail, defendant again asked him if he would stay and talk about the investigation. Trooper Maki, who was also in the car, testified that he heard defendant ask Trooper Gutierrez to stay with him and talk. According to defendant, the troopers asked for an interview room as soon as they arrived at the jail and they immediately took defendant into the room and began to question him and pressure him to confess. The interview lasted about 1½ hours, during which defendant denied the charges, confessed, and then recanted his statements. Defendant was not read his *Miranda* rights again, but was reminded that he had been read his rights earlier in the day at the polygraph examination. At trial, defendant admitted that he knew his rights at the time of the interview and that all statements he made were voluntary.

Defendant moved to suppress the statements that he made to the police after he was arraigned and appointed an attorney. At the hearing on defendant's

motion, defendant argued that the statements should be suppressed because they were obtained in violation of his Sixth Amendment right to counsel when the police initiated contact with him after arraignment and appointment of counsel. The prosecution argued that the police properly obtained the statements after defendant knowingly and intelligently waived his right to counsel by initiating contact with the police.

The trial court held that the troopers' testimony that defendant initiated the contact with the police after the polygraph examination was more persuasive than defendant's testimony. The court found that this evidence, along with Trooper Gutierrez's claim that he reminded defendant of his rights and defendant indicated that he knew them "by heart," was sufficient to prove that defendant initiated the contact; therefore, the motion to suppress was denied.

II

The Sixth Amendment guarantees anyone accused in criminal proceedings the right to assistance of counsel. *People v Anderson (After Remand)*, 446 Mich 392, 402; 521 NW2d 538 (1994). Once defendant requests counsel either at questioning or at his arraignment, "the police may not conduct further interrogations until counsel has been made available to the accused, unless the accused initiates further communications, exchanges, or conversations with the police." *Id.* quoting *People v Bladel (After Remand)*, 421 Mich 39, 66; 365 NW2d 56 (1984). Thereafter, "[i]f a defendant chooses to reinitiate communications, he must be sufficiently aware of both his Fifth and Sixth Amendment rights to effectu-

ate a voluntary, knowing, and intelligent waiver of each right." *Bladel, supra* at 66.

In reversing the trial court, the majority relies on *Anderson (After Remand), supra.* In that case after the defendant requested a polygraph and was arraigned, the detective assigned to the case set up an appointment and contacted the defendant by leaving a message at his house. *Id.* at 401. The defendant received the message and contacted the detective to accept the offer for transportation to the polygraph examination. *Id.* At the administration of the examination, the defendant signed a standard waiver form, waiving his *Miranda* rights. *Id.*   In a postpolygraph interview, the detective asked the defendant if he remembered the rights read to him earlier in the day and the defendant responded in the affirmative and then gave the detective a statement. *Id.* Our Supreme Court found that although the defendant initiated prearraignment contact regarding the polygraph examination, postarraignment communication was initiated by the detective when he left a message at the defendant's house and the defendant never initiated contact with the police thereafter; rather questioning of the defendant was initiated by the police. *Id.* at 404. Therefore, the postpolygraph interrogation and admission by the defendant in the patrol car was obtained in violation of the defendant's Sixth Amendment rights. *Id.*

However, the facts in this case are similar to the facts in *Anderson* only to the extent that the police initiated the first postarraignment contact with defendant regarding the polygraph examination. Despite this limited factual similarity, here, unlike in *Anderson*, defendant requested that the police stay and talk with him after the polygraph examination, thereby

reinitiating contact with the police. Troopers Maki and Gutierrez testified that defendant asked police to talk with him about the investigation, and he was fully aware of his rights as he indicated that he knew them "by heart." The holding in *Anderson* does not apply where a defendant is the initiator of communications with police and thereafter waives his Sixth Amendment right to counsel.

Moreover, even though defendant denies reinitiating contact, the trial court believed the troopers' testimony. This Court will not review issues of credibility of witnesses. *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998). Finally, although the police did contact defendant postarraignment by visiting him in jail to discuss the appointment for the polygraph examination, this contact did not generate the statements that defendant wishes to suppress. Defendant only made the statements that he wished to suppress *after* he reinitiated contact with the police by making a request to discuss the investigation.

I also disagree with the majority's statement that a jailed defendant cannot validly waive his right to counsel and make inculpatory statements simply because they were "obtained during the course of ongoing conduct that was originally initiated by police." *Ante* at 707. Again, I note that no interrogation occurred until defendant requested to talk with the troopers. Defendant was reminded of his rights and was free to decline to make any statement at all.

III

I agree with the trial court that this case is more appropriately compared to *People v McElhaney*, 215 Mich App 269; 545 NW2d 18 (1996). In *McElhaney*,

the defendant initiated contact with police when he demanded a polygraph examination via a letter postarraignment. The defendant was then read his *Miranda* rights and given a polygraph examination. *Id.* at 273. In a postpolygraph interview, the defendant confessed to the crime. *Id.* On appeal, the defendant argued that the statement he made after the polygraph examination was inadmissible because it violated his Sixth Amendment right to counsel. *Id.* In *McElhaney*, this Court stated "a knowing and intelligent waiver of the Sixth Amendment right to counsel depends upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Id.* at 274. Through application of this test, the *McElhaney* Court held that the defendant knowingly and intelligently waived his right to counsel because he initiated contact with the police regarding the polygraph, he had a lengthy criminal history and insisted on the polygraph despite his counsel's advice, and he was read his *Miranda* rights before the polygraph. *Id.* at 274-275.

In the instant case, defendant meets the criteria set forth in *McElhaney*. As previously discussed, defendant initiated contact with the police before making the statements in question. At the polygraph administration, defendant was read his *Miranda* rights and signed a standard form waiving them. Trooper Escalante, the polygraph administrator, informed the officers on the case of defendant's waiver. When Trooper Gutierrez reminded defendant of his rights before the postpolygraph interview, defendant said that he knew his rights "by heart." Similar to *McElhaney*, defendant had previous contact with the criminal justice system, including a pending drunken driving

charge in Michigan at the time he left for California. Additionally, defendant testified that the police did not coerce or in any way force defendant to make a confession and that he made his statements voluntarily. Finally, defendant wanted a polygraph examination in order "to prove his innocence," and he knew that he had the option of declining to take the examination.

The trial court properly applied the *McElhaney* test and held that defendant sufficiently demonstrated that he knowingly and intelligently waived his Sixth Amendment rights because, like the defendant in *McElhaney*, he had previous experience with the criminal justice system, was read his *Mirada* rights before his confession, and he initiated postarraignment contact with the police. Therefore, I conclude the trial court did not err in denying defendant's motion to suppress.