*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

UNPUBLISHED
April 18, 2024

v

No. 367901
Wayne Circuit Court
LC No. 22-007747-01-FC

MARK DAVID WOOLLEY,

        Defendant-Appellee.

Before: RIORDAN, P.J., and O'BRIEN and MALDONADO, JJ.

PER CURIAM.

In this interlocutory appeal, the prosecution appeals by leave granted[1] the trial court's order granting defendant's motion to suppress statements he made to law enforcement during two custodial interviews and a polygraph examination. Defendant was charged with six counts of first-degree criminal sexual conduct, MCL 750.520b(2)(b) (victim less than 13 years old) and two counts of second-degree criminal sexual conduct, MCL 750.520c(2)(b) (victim less than 13 years old). We reverse with respect to the first interview but otherwise affirm.

## I. BACKGROUND

Defendant was arrested following disclosures of sexual abuse made by his grandchild. Following his arrest, defendant was interviewed by police, and the next day he submitted to a polygraph examination. Later that day, a second interview was conducted, and during the second interview, defendant confessed to engaging in sexual contact with the complainant on numerous occasions while the complainant was between the ages of 9 and 12. Specifically, defendant described masturbating on the complainant's buttocks, performing fellatio on the complainant, and making the complainant perform fellatio on him. Defendant moved for suppression of these inculpatory statements, asserting that he was questioned in violation of his *Miranda*[2] rights because

---

[1] *People v Woolley*, unpublished order of the Court of Appeals, entered November 15, 2023 (Docket No. 367901).

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602;16 L Ed2d 694 (1966).

he asserted his right to an attorney. The trial court agreed with defendant, and his statements were suppressed. This appeal followed.

## II. DISCUSSION

The prosecution argues that the trial court erred by finding that defendant unequivocally invoked his right to counsel. With the exception of defendant's statement early in the first interview, we disagree.

This Court reviews "de novo a trial court's ultimate decision on a motion to suppress on the basis of an alleged constitutional violation." *People v Gingrich*, 307 Mich App 656, 661; 862 NW2d 432 (2014). This Court reviews for clear error a trial court's findings of fact from a suppression hearing. *Id*. "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *Id*. 661 (quotation marks and citation omitted). This Court reviews de novo "[a]ny ancillary questions of law relevant to the motion to suppress . . . ." *Id*.

"The right against self-incrimination is guaranteed by both the United States Constitution and the Michigan Constitution." *People v Tierney*, 266 Mich App 687, 707; 703 NW2d 204 (2005), citing US Const, Am V; Const 1963, art 1, § 17. Thus, "[a] criminal defendant enjoys safeguards against involuntary self-incrimination during custodial interrogations." *People v Henry (After Remand)*, 305 Mich App 127, 145; 854 NW2d 114 (2014). Among these safeguards is the right to have counsel present during a custodial interrogation "because the presence of counsel at custodial interrogation is one way in which to insure that statements made in the government-established atmosphere are not the product of compulsion." *People v Elliott*, 494 Mich 292, 301; 833 NW2d 284 (2013) (quotation marks and citation omitted). Before a person may be subjected to custodial interrogation, "the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602;16 L Ed2d 694 (1966). When a suspect invokes his right to counsel, the police must immediately cease questioning the suspect and cannot resume questioning until counsel is present. *Tierney*, 266 Mich App at 710-711.

"However, the defendant's invocation of his right to counsel must be unequivocal." *Id*. at 711. A suspect's assertion of his or her right to counsel is unequivocal if the assertion is unambiguous. See, e.g., *Henry (After Remand)*, 305 Mich App at 147. Police are not required to immediately cease questioning "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel . . . ." *Davis v US*, 512 US 452, 459; 114 S Ct 2350; 129 L Ed 2d 362 (1994). A suspect who has properly invoked his right to counsel can later waive his right to counsel without the presence of an attorney. *People v Harris*, 261 Mich App 44, 54; 680 NW2d 17 (2004). When a defendant asserts his right to counsel but later reinitiates a conversation with police, "the proper inquiry is whether the defendant reinitiated a conversation on the subject matter of the investigation and whether, under the totality of the circumstances, the defendant knowingly and intelligently waived his right to counsel . . . ." *People v Clark*, 330 Mich App 392, 418; 948 NW2d 604 (2019).

With respect to what constitutes an unequivocal and unambiguous assertion of the right to counsel, the Supreme Court in *Davis* concluded that the defendant did not unequivocally or unambiguously assert his right to counsel when the defendant stated during a custodial interview, "Maybe I should talk to a lawyer." *Davis*, 512 US at 462. This Court has also previously considered whether a defendant's assertion of his right to counsel during a custodial interrogation was unequivocal and unambiguous. In *Tierney*, this Court held that the defendant's statements that "[m]aybe I should talk to an attorney" and "I might want to talk to an attorney" were not unequivocal assertions of the defendant's right to counsel. *Tierney*, 266 Mich App at 711. This Court has also held that a defendant did not unequivocally assert her right to counsel by asking police, "Shouldn't I have a lawyer?" *McBride*, 273 Mich App at 258-259.

## A. FIRST INTERVIEW

The trial court erred by finding that defendant unequivocally and unambiguously asserted his right to counsel by stating during the first interview on November 17, 2022, "I think I should call my attorney," because "a reasonable officer in light of the circumstances would have understood only that [defendant] *might* be invoking the right to counsel . . . ." *Davis*, 512 US at 459. Defendant's statement was similar to the equivocal statement of the defendant in *Davis* that "[m]aybe I should talk to a lawyer." *Id*. at 462. It is also similar to the equivocal statements of the defendant in *Tierney* that "[m]aybe I should talk to an attorney" and "I might want to talk to an attorney." *Tierney*, 266 Mich App at 711. In both *Davis* and *Tierney*, the defendants' statements expressed an uncertainty as to whether they wanted to speak with an attorney. Here, defendant's use of the phrase "I think" to preface his statement that "I should call my attorney" expresses the same degree of uncertainty as the equivocal statements of the defendants in *Davis* and *Tierney*. Further, suggesting that he *should* call an attorney is not the same as stating that he will or that he wants to.

Moreover, as argued by the prosecution, defendant's statement that "I think I should call my attorney" was not an unequivocal assertion of his right to counsel because defendant continued to speak with police unprompted after making this statement. After stating that "I think I should call my attorney," defendant continued to discuss the subject matter of the investigation as follows:

> And then, also, I think I should call my attorney, right, and at least have—you know, I mean, the fact that [complainant] said something takes it beyond a point where it's just my daughter trying to destroy me, I guess. And that was a thing we kept talking about as a family, is what is her end game here? Does she want money? I don't [inaudible]. Does she want, you know, what is it? You know, and I can't figure this out, you know, because—it just—the ball just kept—everything just kept changing. And then this is where it lands. And it's so preposterous that it's, you know—and then now to say that [complainant] is saying this, these things, when I know them not to be true. I'm—I can't say it enough. I cannot say it enough. But I am—I will get information from my doctor, I will get, you know, whatever information you guys need to debunk this, I guess, for lack of a better term because I don't know. Is this his way of wanting to get back home? I don't know.

In light of the uncertain nature of defendant's statement that "I think I should call my attorney" and the fact that defendant continued to discuss the subject matter of the investigation unprompted after making this statement, a reasonable officer would understand only that defendant might want to assert his right to counsel; thus, this statement was not an unequivocal assertion of defendant's right to counsel, and the police were not required to cease questioning defendant after this statement.

## B. POLYGRAPH

The prosecution next argues that defendant's statement on November 17, 2022, regarding wanting an attorney before taking the polygraph examination was not an ambiguous and unequivocal assertion of his right to counsel. We disagree.

As an initial matter, the trial court misconstrued Detective Wilson's testimony regarding when defendant made the statement that he wanted an attorney to ensure, as paraphrased by Detective Wilson, that "no funny stuff" occurred during the polygraph examination. The trial court found that

> the defense attorney, Mr. Matthews, states to Detective Wilson that he is going to call a criminal attorney and despite him saying that[,] Detective Wilson then returns to Mr. Woolley and discusses the polygraph examination and in discussing whether he wishes to take the polygraph[,] Mr. Woolley's first statement is, "I want an attorney to make sure the polygraph is on par and for him to sit with me in the polygraph to make sure it is standard, no funny stuff[.]"

Thus, it appears that the trial court was under the misapprehension that defendant made this statement on November 18, 2022, after meeting with Matthews. However, it appears that Detective Wilson's testimony regarding defendant's comment about "no funny stuff" was a paraphrasing of defendant's statements at the end of the first interview on November 17, 2022, that "I'd also like to contact my attorney so he can arrange for whatever, you know, kind of thing," and that "I want to ask [my attorney], like, you know—look, I'm being honest, I'm being up front . . . and now, I will take a polygraph test. That's not going to change my mind because, you know, right now I'm very anxious." Having clarified that the statement regarding "no funny stuff" was made during the first interview on November 17, 2022, and not on November 18, 2022, we will now address whether the trial court erred by finding these statements to be an unequivocal and unambiguous assertion of defendant's right to counsel.

The trial court did not err by finding that defendant's statements regarding speaking with an attorney in advance of the polygraph examination were unambiguous and unequivocal assertions of defendant's right to counsel. Defendant clearly stated during the first interview, "I'd also like to contact my attorney so he can arrange for whatever, you know, kind of thing." This statement by defendant clearly communicated his desire to assert his right to counsel. If Detective Wilson was under any misapprehension that defendant was asserting his right to counsel, that misapprehension was clarified by defendant when Detective Wilson asked if defendant wanted to speak with his attorney before the polygraph examination and defendant responded that he would take the polygraph examination, but he wanted to ask his attorney unspecified questions. The trial

-4-

court did not clearly err by finding that these statements by defendant communicated that he wanted to speak with an attorney in advance of the polygraph.

The prosecution also argues that defendant's statements on November 17, 2022, regarding wanting an attorney before taking the polygraph examination were merely inquiries into the way the process worked and, therefore, do not constitute unambiguous and unequivocal assertions of the right to counsel. It is true that a defendant does not unequivocally assert the right to counsel merely by inquiring into whether he or she may speak to an attorney during a custodial interrogation. *People v Adams*, 245 Mich App 226, 238; 627 NW2d 623 (2001). In the instant case, however, defendant's statements were not inquiries into whether he was allowed to have an attorney. Defendant told Detective Wilson that he wanted to contact his attorney "so [his attorney] can arrange for whatever," and indicated that he had questions that he wanted to ask his attorney. Nothing about defendant's statements suggests that he was merely asking Detective Wilson whether he was entitled to have an attorney or how the polygraph examination process worked. As the trial court found, defendant's statements regarding his attorney and the polygraph examination were unequivocal assertions of his right to counsel.

## C. SUBSEQUENT QUESTIONING

The prosecution argues that even if defendant unequivocally asserted his right to counsel on November 17, 2022, he waived that right on November 18, 2022, by acknowledging and waiving his *Miranda* rights before undergoing the polygraph examination and again before the second interview with Detective Wilson and Detective McNamara. We disagree.

It is true that a defendant who asserts the right to counsel can later waive the right to counsel. *Harris*, 261 Mich App at 54. However, once a suspect unequivocally asserts the right to counsel, police must immediately cease questioning the suspect until counsel is present, *Tierney*, 266 Mich App at 710-711, or until the defendant reinitiates a conversation with police about the subject matter of the investigation and the defendant knowingly and intelligently waives the previously asserted right to counsel, *Clark*, 330 Mich App at 419. It is undisputed that defendant's counsel was not present for the polygraph examination or postpolygraph interview with Detective McNamara. It is also undisputed that defendant read and signed a *Miranda* waiver before undergoing the polygraph examination. Thus, to determine whether defendant waived his previously asserted right to counsel with respect to the polygraph examination and postpolygraph interview, the proper inquiry is whether defendant reinitiated a conversation with police about the subject matter of the investigation. *Id*.

Our Supreme Court has previously considered under what circumstances a defendant reinitiates contact with police with respect to a polygraph examination such that the defendant validly waives the right to counsel. See *People v Anderson*, 446 Mich 392, 402-404; 521 NW2d 538 (1994). In *Anderson*, the Supreme Court held that the defendant did not reinitiate contact with police such that he validly waived his Sixth Amendment right to counsel when the defendant requested a polygraph examination before he was arraigned but the examination was not offered

-5-

or conducted until after he was arraigned.[3] *Id*. at 403-404. The Court held that after the defendant was arraigned and requested appointed counsel, his Sixth Amendment right to counsel was invoked; thus "the general prohibition against further police interrogation was invoked, absent any subsequent initiation *and* waiver by defendant." *Id*. at 403 (footnotes omitted). Though the polygraph examination was requested by the defendant before he invoked his right to counsel, the Court held that the defendant did not reinitiate contact with police for the purposes of a waiver of the right to counsel by undergoing the polygraph examination because the polygraph examination was initiated by police contacting the defendant after he had invoked his right to counsel. *Id*. at 404.

Similarly, this Court has held that police obtained inculpatory statements from a defendant in violation of his Sixth Amendment right to counsel when the inculpatory statements were made following a polygraph examination that occurred after the defendant invoked his right to counsel. *People v Harrington*, 258 Mich App 703, 706-707; 672 NW2d 344 (2003). In *Harrington*, police discussed the possibility of taking a polygraph examination with the defendant prior to his arraignment but did not contact the defendant to arrange and conduct the polygraph examination until after the defendant's arraignment when counsel was appointed and defendant's Sixth Amendment right to counsel was invoked. *Id*. at 704-705. Thus, the Court held it was the police—not the defendant—who reinitiated communications about the subject matter of the investigation after the defendant invoked his right to counsel. This Court rejected the argument that the defendant reinitiated communication with police by asking to speak with them after the polygraph examination, thereby waiving his right to counsel, because "[t]he statements allegedly elicited from defendant were obtained during the course of ongoing contact that was originally initiated by the police." *Id*. at 707.

Defendant did not waive his previously asserted right to counsel with respect to the polygraph examination and postpolygraph interview with Detective McNamara. Like the defendants in *Anderson* and *Harrington*, defendant discussed with police the possibility of taking a polygraph examination before he asserted his right to counsel. Further, as in *Anderson* and *Harrington*, after defendant asserted his right to counsel, police reinitiated contact with defendant for the purposes of arranging and administering a polygraph examination. In *Anderson* and *Harrington*, the mere fact that the defendants underwent polygraph examinations did not constitute reinitiating contact with police; rather, the point that contact was reinitiated in both cases was when police contacted the defendants, after they invoked their rights to counsel, to arrange and administer the polygraph examination. *Anderson*, 446 Mich at 403-404; *Harrington*, 258 Mich App at 707. The same is true in the instant case: after defendant unequivocally asserted his right to counsel on November 17, 2022, police reinitiated contact with defendant for the purposes of arranging and administering the polygraph examination. Thus, with respect to the polygraph examination and postpolygraph interview with Detective McNamara, defendant did not validly waive his previously asserted right to counsel because defendant did not reinitiate the contact with

---

[3] Though the issue in *Anderson* involved the defendant's Sixth Amendment right to counsel, our Supreme Court has recognized that "[t]he inquiry regarding waivers of Sixth Amendment rights mirrors the inquiry of whether a defendant has validly waived his Fifth Amendment rights . . . ." *People v Williams*, 470 Mich 634, 640; 683 NW2d 597 (2004).

police.  The trial court, therefore, did not err by suppressing defendant's inculpatory statements made during the postpolygraph interview with Detective McNamara.

The trial court likewise did not err by suppressing defendant's statements during the second interview.  Detective McNamara testified that after the polygraph examination and postpolygraph interview, defendant asked to speak with Detective Wilson because "[h]e wanted to be truthful and get what he told [Detective McNamara] off his chest."  Defendant and Detective McNamara thereafter went to a different interview room where they were joined by Detective Wilson.  This is similar to *Harrington* because the second interview was part of a "course of ongoing contact that was originally initiated by the police."  *Harrington*, 258 Mich App at 707.  Indeed, the interview took place the same day as the polygraph examination, and the purpose of the interview was to follow up on the statements made during the examination.

Affirmed in part, reversed in part, and remanded for additional proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Colleen A. O'Brien
/s/ Allie Greenleaf Maldonado