*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 6, 2019

Plaintiff-Appellee,

v

No. 323741
Wayne Circuit Court
LC No. 14-001748-FC

JOHNNY RAY KENNEDY,

Defendant-Appellant.

Before: MURRAY, C.J., and STEPHENS and RIORDAN, JJ.

STEPHENS, J. (*dissenting*)

I disagree with the majority as to whether issue preservation is properly before us. The plaintiff argues, for the first time on remand, that the defendant did not preserve the due process issue. Neither of the briefs before the Supreme Court addressed issue preservation. The order of remitter directed us to apply the standards articulated in *Ake* and *Moore* to this case. The opinion in its final line stated "case remanded to the Court of Appeals for application of *Ake*'s Due-Process analysis and *Moore*'s reasonable-probability standard." *People v Kennedy,* 502 Mich 206, 917 NW2d 355 (2018). Thus, the issue of preservation is outside of our directive on remand. "When an appellate court remands a case with specific instructions, it is improper for a lower court to exceed the scope of the order." *K & K Const., Inc. v Department of Environmental Quality*, 267 Mich App 523, 705 NW 2d 365 (2005), quoting *Waati & Sons Electric Co. v Dehkco*, 249 Mich App 641, 646, 644 NW2d 383 (2002).

In addition to the fact that issue preservation is beyond the scope of remand, there is evidence in the record that the defense counsel preserved this issue before the trial court. Preserved issues of constitutional error are reviewed to determine whether they are harmless beyond a reasonable doubt. *People v Henry*, 305 Mich App 127, 144; 854 NW2d 114 (2014). A constitutional error is harmless if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error. *Id*. Preserved issues of non-constitutional error warrant reversal if it is more likely than not that "after an examination of the entire cause, it shall affirmatively appear that the error asserted has resulted in a miscarriage of justice." *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999). To preserve an evidentiary issue for review,

a party must object at trial and specify the same ground for objection that it asserts on appeal. MRE 103(a)(1); *People v Grant*, 445 Mich 535, 545, 553; 520 NW2d 123 (1994). Defendant initially preserved this issue for appeal by making a motion to admit the evidence and appoint an expert in the trial court. In that motion, the defendant noted that without an expert he would not be able to confront witnesses, a fundamental due process right. The motion itself notes in paragraph 10 that it was made under the 6th amendment. The transcript from the May 9, 2014 hearing on the motion contains counsel's assertion that the expert was needed for him to effectively represent his client and to examine the DNA evidence and the government's DNA witnesses. The trial court summarily denied the request without citing the basis of the denial. This, I would assert, is sufficient to preserve his constitutional claim. Once the trial court has made a definitive ruling on the record admitting or excluding evidence, a party need not renew his objection or offer of proof to preserve the issue for appeal. MRE 103(a)(2).

Where the claim of error is preserved and a constitutional error is found it is the prosecution's burden to establish that the error was harmless beyond a reasonable doubt. *People v Anderson* (*After Remand*), 446 Mich 392, 521 NW2d 538 (1994)

In *Mathews v Eldridge*, the Supreme Court stated that:

> . . . due process generally requires consideration of three distinct factors: First, the private interests that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [424 US 319, 335; 96 S Ct 893; 47 L Ed 2d 18 (1976)].

The private interest at stake here is defendant's liberty and his right to present a defense to the charge against him. These interests have been recognized as substantial. "The interest of the individual in the outcome of the State's effort to overcome the presumption of innocence is obvious and weighs heavily[.]" *Ake v Oklahoma*, 470 US 68, 78; 105 S Ct 1087; 84 L Ed 2d 53 (1985).

The majority concedes that the defense proffer regarding Zubel meets the *Moore* test and that the trial court failed to engage in the appropriate analysis. The DNA evidence that identified the defendant was collected from the victim nearly two decades ago and languished among thousands of untested evidence kits. At the evidentiary hearing on remand defense counsel conceded that Zubel, whom he hired at his personal expense indicated to him that based upon his limited review that the DNA sample properly identified his client. However, neither Zubel nor defense counsel were informed there were other persons who were matched to the same DNA. Assuming that the failure to provide the discovery was due to something other than intentional obfuscation, it is more likely than not that Zubel would have investigated further and discovered the multiple matches and provided counsel with tools for effective cross-examination on the import of those multiple matches. This is a case like *Ake* where "[w]ithout a[n] [expert's]

assistance, the defendant cannot offer a well-informed expert's opposing view, and thereby loses a significant opportunity to raise in the jurors' minds questions about the State's proof of an aggravating factor." 470 US at 84.[1] At trial, the prosecution presented two forensic experts. Through these experts, the jury learned about DNA, different types of DNA testing, the DNA testing results in this case, and the meaning of the test results as applied to defendant. I cannot conclude that the failure to appoint Zubel to assist counsel was harmless beyond a reasonable doubt.

The majority, in contrast, finds that the constitutional claim is unpreserved. Unpreserved claims of constitutional error are reviewed under the plain-error test, *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999), which "has four elements":

> 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) . . . the plain error affected substantial rights . . . [, and 4) ] once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018), quoting *Carines*, 460 Mich at 763 (alterations and ellipses in *Randolph*).]

"A 'clear or obvious' error under the second prong is one that is not subject to reasonable dispute." *Randolph*, 502 Mich at 10. The third element "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Carines*, 460 Mich at 763. "It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Id*. (Quotation marks and citation omitted).

---

[1] There can be no doubt that many types of expert witnesses—including DNA experts—have played a pivotal role in criminal proceedings. It is undisputed in this case—and indeed seems beyond dispute—that DNA and other types of experts may sometimes "be crucial to the defendant's ability to marshal his defense." *Id* at 80 (quotation marks and citation omitted). And, finally, we have yet to discern an exact science on this topic—indeed, the very notion is incompatible with our adversarial system of justice, in which "juries remain the primary factfinders . . . and they must resolve differences of opinion [among the experts] on the basis of the evidence offered by each party." *Id*. at 81; see also *Hinton v Alabama*, 571 US 263, 134 S Ct 1081 (2014) ("Prosecution experts, of course, can sometimes make mistakes. Indeed, we have recognized the threat to fair criminal trials posed by the potential for incompetent or fraudulent prosecution forensics experts, noting that '[s]erious deficiencies have been found in the forensic evidence used in criminal trials.' . . . This threat is minimized when the defense retains a competent expert to counter the testimony of the prosecution's expert witnesses; it is maximized when the defense instead fails to understand the resources available to it by law."), quoting *Melendez-Diaz v Massachusetts*, 557 US 305, 319; 129 S Ct 2527; 174 L Ed 2d 314 (2009).

However, even if the standard of review in this case is that for an unpreserved claim of constitutional error the defendant has established that the error was plain and obvious and that it affected the integrity of the proceeding. As noted earlier, applying the *Moore* standard the majority concedes that the defendant demonstrated a reasonable probability that an expert would have benefited his case. As noted in the evidentiary hearing on remand, Zubel in his report to defense counsel prior to the first trial had referenced the issue of additional testing of the 20 year old DNA sample. Unfortunately Zubel, now deceased, did not participate in the remand hearing. Counsel testified at the remand hearing that he believed that a retained Zubel would have helped him more effectively examine the prosecutor's DNA expert. It is reasonably probable that a retained expert, such as Zubel, would have requested additional testing, and it is more likely than not the evidence of multiple matches to the DNA would also, have been discovered and addressed by Zubel. In cases based upon scientific evidence, indigent defendants are fundamentally entitled to "an adequate opportunity to present their claims fairly within the adversary system." *Ake*, 470 US at 76-77. In a case with scant evidence other than the DNA the presentation of information regarding the import of multiple matches could have created reasonable doubt in the mind of the jury. In this instance, only the prosecutors informed voice was heard through the two experts presented by the prosecution. It is thus reasonable to conclude that this evidence and the defense's inability to adequately rebut the evidence affected the jury's decision to convict. We should instead reverse and remand for a new trial. I respectfully dissent.

/s/ Cynthia Diane Stephens

-4-