*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

NADEEM YOUSAF RAJPUT,

       Defendant-Appellant.

UNPUBLISHED
September 24, 2020

No. 339117
Wayne Circuit Court
LC No. 16-008073-01-FC

ON REMAND

Before: MURRAY, C.J., and BORRELLO and RONAYNE KRAUSE, JJ.

PER CURIAM.

This case, in which defendant appeals as of right his jury conviction of second-degree murder, MCL 750.317,[1] returns to this Court on remand from our Supreme Court. For the reasons set forth in this opinion, we vacate defendant's conviction and remand this matter for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

In our prior opinion, we summarized the pertinent facts as follows:

> Defendant's conviction arises from events on May 7, 2016, in Detroit, which culminated in the shooting death of Lakisha Henry. That afternoon, Henry was driving a red or burgundy Malibu, with her boyfriend, Dewayne Clay. Defendant was driving a white Infinity that afternoon. Henry's vehicle approached defendant's vehicle as defendant was driving down the street, at which time

---

[1] The jury acquitted defendant of an original charge of first-degree premeditated murder, MCL 750.316(1)(a), as well as an additional charge of possession of a firearm during the commission of a felony, MCL 750.227b.

-1-

gunshots were fired from Henry's vehicle toward defendant's vehicle. No one was injured in that shooting.

Defendant was with another man known only as "Haus." Immediately after the shooting, defendant and Haus went to defendant's home, went inside, and left a short time later. After defendant and Haus left defendant's house, they searched for and found the red Malibu involved in the earlier shooting, which Henry was still driving. Henry had dropped Clay off, leaving Henry as the only occupant of her vehicle. Witnesses observed defendant's vehicle chasing after Henry's vehicle, eventually trapping it at a location where Henry's vehicle became blocked. Defendant and Haus then approached Henry's car on foot. After a brief argument, multiple gunshots were fired, ending in Henry's death. The identity of the shooter was a disputed issue at trial. The prosecution's theory at trial was that defendant either shot Henry himself, or aided and abetted Haus in shooting her. Defendant testified at trial and claimed that he approached Henry only to find out who had shot at him. He denied being armed with a gun. Defendant claimed that Henry grabbed for a gun from the passenger seat of her car, after which Haus reacted by removing a gun from his waistband and shooting Henry. [*People v Rajput*, unpublished per curiam opinion of the Court of Appeals, issued October 25, 2018 (Docket No. 339117), pp 1-2 (*Rajput I*).]

## II. PROCEDURAL HISTORY

We affirmed defendant's conviction when this case was first before us, concluding in relevant part that the trial court had not reversibly erred (1) by declining to give the jury a self-defense instruction or (2) by denying defendant's request to introduce into evidence certain testimony given by Pierre Carr under an investigative subpoena. *Rajput I*, unpub op at 1, 5-6. Our Supreme Court reversed this Court's holdings regarding the self-defense instruction and admissibility of Carr's testimony, remanding the matter for further consideration related to these issues. *People v Rajput*, ___ Mich ___, ___; ___ NW2d ___ (2020) (Docket No. 158866); slip op at 7 (*Rajput II*).[2]

Following defendant's motion for reconsideration, the Supreme Court amended the portion of its opinion containing its remand instructions on these two issues to read as follows:

We reverse the Court of Appeals' holdings that defendant was not entitled to his requested self-defense instruction and that Carr's testimony was irrelevant. We remand this case to the Court of Appeals to address whether the trial court's erroneous denial of defendant's requested self-defense instruction was harmless beyond a reasonable doubt. See *People v Anderson (After Remand)*, 446 Mich 392 (1994); *People v Carines*, 460 Mich 750 (1999). The Court of Appeals shall also address whether Carr's investigative-subpoena testimony was admissible under

---

[2] The Supreme Court also directed this Court to reconsider defendant's sentence "[i]f the Court of Appeals affirms defendant's conviction." *Rajput*, ___ Mich at ___; slip op at 7-8. However, because we conclude that defendant's conviction must be vacated, we do not address this issue.

MRE 804(b)(1) and whether Clay's statement to the victim was admissible either as an excited utterance under MRE 803(2) or because it was not hearsay under MRE 801(c). If the panel concludes that the evidence was admissible, it shall consider whether exclusion of Carr's testimony was harmless or whether it is more probable than not that the error was outcome-determinative. *People v Lukity*, 460 Mich 484, 495-496 (1999). [*People v Rajput*, ___ Mich ___, ___ (June 5, 2020) (Docket No. 158866) (*Rajput III*).]

## III. SELF-DEFENSE INSTRUCTION

Our Supreme Court held that "the Court of Appeals erred by affirming the denial of defendant's requested self-defense instruction." *Rajput II*, ___ Mich at ___; slip op at 5. The Supreme Court instructed this Court on remand "to address whether the trial court's erroneous denial of defendant's requested self-defense instruction was harmless beyond a reasonable doubt" under the standard enunciated in *People v Anderson (After Remand)*, 446 Mich 392; 521 NW2d 538 (1994), and *People v Carines*, 460 Mich 750; 597 NW2d 130 (1999). *Rajput III*, ___ Mich at ___. This standard applies to a preserved, nonstructural, constitutional error. *Anderson*, 446 Mich at 405-406; *Carines*, 460 Mich at 774. The harmless beyond a reasonable doubt standard "requires the beneficiary of the error to prove, and the court to determine, beyond a reasonable doubt that there is no reasonable possibility that the [error] complained of might have contributed to the conviction." *Anderson*, 446 Mich at 406 (quotation marks and citation omitted); see also *Carines*, 460 Mich at 774.

In this case, there was evidence that defendant and Haus were able to safely escape to defendant's house after having been the targets of gunshots fired from the victim's car. There was further evidence that defendant and Haus then left defendant's house, hunted the victim down, blocked the victim's avenue of escape, approached the victim's vehicle on foot, and engaged in a verbal argument with the victim, after which the victim was shot to death. However, defendant testified that he only approached the victim to find out who had shot at him, and defendant maintained that he was not armed with a gun. Defendant further claimed that the victim reached for a gun from the passenger seat of her car and that Haus subsequently reacted by pulling out a gun and shooting the victim. The police recovered a gun from the front passenger seat of the victim's car.

"[T]he affirmative defense of self-defense justifies otherwise punishable criminal conduct, usually the killing of another person, if the defendant honestly and reasonably believes his life is in imminent danger or that there is a threat of serious bodily harm and that it is necessary to exercise deadly force to prevent such harm to himself." *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010) (quotation marks and citation omitted).[3] "In general, a defendant does not act in justifiable self-defense when he or she uses excessive force or when the defendant is the initial aggressor." *People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013). Additionally, "[o]ne who is involved in a physical altercation in which he is a willing participant—referred to at

---

[3] The contours of the affirmative defense of self-defense are defined both by common law and by the Self–Defense Act (SDA), MCL 780.971 *et seq*. See *People v Guajardo*, 300 Mich App 26, 35-36, 40; 832 NW2d 409 (2013).

common law as a 'sudden affray' or a 'chance medley'—is *required* to take advantage of any reasonable and safe avenue of retreat before using deadly force against his adversary, should the altercation escalate into a deadly encounter." *People v Riddle*, 467 Mich 116, 120; 649 NW2d 30 (2002).

However, "once the defendant injects the issue of self-defense and satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution bears the burden of proof to exclude the possibility that the killing was done in self-defense. . . ." *Dupree*, 486 Mich at 709-710 (quotation marks and citation omitted; ellipsis in original). "A finding that a defendant acted in justifiable self-defense necessarily requires a finding that the defendant acted intentionally, but that the circumstances justified his actions." *Id.* at 707 (quotation marks and citation omitted).

Our Supreme Court held in the instant case, "whether defendant and Haus were the initial aggressors or could have fled were issues 'for the jury to decide' because defendant presented sufficient evidence to satisfy his burden of proof on self-defense." *Rajput II*, ___ Mich at ___; slip op at 5 (citation omitted). Because defendant presented sufficient evidence to establish a prima facie defense entitling him to a jury instruction on self-defense, the burden of disproving this defense should have resided with the prosecution. *Dupree*, 486 Mich at 709-710. Yet, in the absence of a proper self-defense instruction, the jury was effectively prohibited from considering defendant's theory of defense—and the prosecution's burden of disproving that defense—in its deliberative process. The jury was not instructed that it could find defendant not guilty for the reason that his otherwise punishable criminal conduct was justifiable self-defense, see *Id.* at 707, which is entirely different than finding that defendant was not guilty because he did not commit a crime, see *Guajardo*, 300 Mich App at 35 n 1 ("An affirmative defense is one that admits the doing of the act charged, but seeks to justify, excuse, or mitigate it. . . . It does not negate selected elements or facts of the crime.") (quotation marks and citation omitted; ellipsis in original).

In light of the conflicting evidence related to the circumstances of the killing that were presented at trial and the trial court's improper jury instructions that "wholly negated defendant's theory of the case" despite the evidence supporting it, we cannot conclude that this error was harmless beyond a reasonable doubt where the jury's verdict may just as likely have been the result of its resolution of conflicting evidence as the result of following the trial court's erroneous instructions that omitted the ability to consider defendant's self-defense theory. See *Dupree*, 486 Mich at 711-712; see also *People v Hoskins*, 403 Mich 95, 99-101; 267 NW2d 417 (1978) (reversing and remanding because there was evidence to support a self-defense instruction, contrary to the ruling of the trial court, and "[b]y refusing to instruct the jury on self-defense, the trial court deprived the defendant of his primary defense."). Therefore, we hold that defendant's conviction must be vacated and that he is entitled to a new trial.

## IV. CARR'S PRIOR TESTIMONY

We have also been instructed by our Supreme Court to reconsider issues related to the admissibility of testimony Carr gave pursuant to an investigative subpoena. Specifically, the Supreme Court instructed us to consider (1) "whether Carr's investigative-subpoena testimony was admissible under MRE 804(b)(1)," (2) whether Clay's statement to the victim was admissible either as an excited utterance under MRE 803(2) or because it was not hearsay under MRE 801(c),"

-4-

and (3) if excluding the evidence was harmless under *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999) should we conclude that the evidence was admissible. *Rajput III*, ___ Mich at ___.

As noted by our Supreme Court, defendant at trial

also tried to admit testimony from Pierre Carr, the brother of Clay, to support his self-defense theory. Carr testified at an investigative-subpoena hearing that Clay had arrived at his house on the day of the shooting and called the victim on the phone as she was being chased. According to Carr, Clay told the victim to "shoot, shoot." *Rajput*, ___ Mich at ___; slip op at 2.

We first address whether Carr's investigative-subpoena testimony was admissible under MRE 804(b)(1), which provides in relevant part as follows:

(b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) Former Testimony. Testimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Here, the parties agreed at trial that Carr was unavailable as a witness and the question thus becomes whether Carr's testimony pursuant to the investigative subpoena satisfied the remaining requirements in MRE 804(b)(1) so as not to be excluded by the hearsay rule. See MRE 802 ("Hearsay is not admissible except as provided by these rules."); MRE 801(c) (" 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").

In *People v Farquharson*, 274 Mich App 268, 271-278; 731 NW2d 797 (2007), this Court held that testimony given at a proceeding held pursuant to an investigative subpoena may qualify for admission under MRE 804(b)(1). The *Farquharson* Court held that investigative subpoena testimony constituted testimony given "at another hearing" for purposes of MRE 804(b)(1). *Farquharson*, 274 Mich App at 272-273, 275. The Court next addressed the similar-motive requirement as follows:

Federal courts have also addressed issues involving admission of grand-jury testimony under the former testimony exception. In *United States v DiNapoli*, 8 F3d 909, 912 (CA 2, 1993) (en banc), the Second Circuit Court of Appeals interpreted the "similar motive" requirement under FRE 804(b)(1). The Second Circuit noted that there are differences between grand-jury and trial proceedings, but declined to hold that a prosecutor generally will not have the same motive to develop testimony at grand-jury proceedings as he or she does at trial. *Id*. at 913-914. The *DiNapoli* court also declined to accept the converse, that the motives will always be similar, indicating that, "[i]n almost every criminal case . . . the Government could probably point to some aspect of cross-examination of an exonerating witness that could have been employed at a prior trial and surely at a

prior grand jury proceeding." *Id*. at 914. The Second Circuit thus encouraged a fact-specific inquiry regarding whether the prosecution had a "similar motive" in developing the witness's testimony during a grand-jury proceeding:

> The proper approach, therefore, in assessing similarity of motive under [FRE] 804(b)(1) must consider whether the party resisting the offered testimony at a pending proceeding had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue. The nature of the two proceedings—both what is at stake and the applicable burden of proof—and, to a lesser extent, the cross-examination at the prior proceeding—both what was undertaken and what was available but forgone—will be relevant though not conclusive on the ultimate issue of similarity of motive. [*Id*. at 914-915.]

> We find the analysis employed in *DiNapoli*, *supra*, well-reasoned and compelling, and thus adopt the following as a nonexhaustive list of factors a trial court is to examine in determining whether the party had a similar motive to examine a witness at the prior proceeding: (1) whether the party opposing the testimony "had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue"; (2) the nature of the two proceedings—both what is at stake and the applicable burdens of proof; and (3) whether the party opposing the testimony in fact undertook to cross-examine the witness (both the employed and available but forgone opportunities). [*Farquharson*, 274 Mich App at 277-278 (alterations and ellipsis in original).]

Applying the above analysis to this case, the prosecution—the party opposing the admission of Carr's testimony—is a party who previously questioned Carr at the investigative-subpoena proceeding about Henry's death.

Second, the nature of the investigate-subpoena hearing and the trial were similar. Both proceedings were concerned with criminal charges related to Henry's death. The purpose of the hearing was to investigate and learn the facts involving the fatal shooting of Henry. While there was no burden of proof with regard to the investigative-subpoena proceeding, a principal purpose of the proceeding was to determine whether Henry's death was the result of criminal activity and, if so, the nature of that activity and the culpability of any offenders. These were issues at trial and the prosecutor would have had a substantially similar interest in probing these issues at the investigative-subpoena proceeding.

Third, although the prosecutor did not technically "cross-examine" Carr at the investigative-subpoena proceeding, the prosecutor nonetheless exercised the right to thoroughly examine Carr about the circumstances of Clay's telephone conversation with Henry while she was being pursued by defendant and Haus. After Carr told the prosecutor that Clay told Henry to "shoot, shoot," the prosecutor questioned Carr about Clay's gun and its location at the time of the shooting. The prosecutor asked if Henry was known to carry a gun, which Carr denied, but Carr stated that he believed Clay had left his gun in the car with Henry when he went inside the house to get bullets. Notably, MRE 804(b)(1) also explicitly permits consideration of whether the party

resisting the proposed testimony previously had "an opportunity and similar motive to develop the testimony by *direct* . . .examination."

Accordingly, we conclude that the prosecution in this case "had an opportunity and similar motive to develop" Carr's testimony at the investigative subpoena proceeding regarding the circumstances of Henry's death and that Carr's investigative subpoena testimony was admissible under MRE 804(b)(1).

Next, this Court must determine whether the next level of hearsay in Carr's previous testimony—Clay's statements—was admissible. "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in [the rules of evidence]." MRE 805. Carr's investigative-subpoena testimony included statements Clay made to Henry, apparently while Henry was being pursued by defendant and Haus, telling Henry to "shoot, shoot." We have been directed to address whether Clay's statements were also admissible, either under the excited utterance exception to the hearsay rule, MRE 803(2), or because the statements were not hearsay. *Rajput III*, ___ Mich at ___.

MRE 803(2) provides that an excited utterance is not excluded by the general prohibition against hearsay in MRE 802. An exited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." MRE 803(2). The requirements for admitting an excited utterance are "1) that there be a startling event, and 2) that the resulting statement be made while under the excitement caused by the event." *People v Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998). "[I]t is the lack of capacity to fabricate, not the lack of time to fabricate, that is the focus of the excited utterance rule. The question is not strictly one of time, but of the possibility for conscious reflection." *Id*. at 551. Although the passage of time is a relevant consideration, "there is no express time limit for excited utterances." *Id*. at 551-552.

We conclude that Clay's statement to Henry to "shoot, shoot," in response to her claim that she was being chased, would qualify as an excited utterance. The statement related to a startling event, namely, that Clay's girlfriend was being pursued by others in another vehicle and how she should respond to her pursuers. The evidence also supported a finding that the statement was made as this event was unfolding, while Clay was under the excitement of knowing that Clay's girlfriend was being pursued. Therefore, to the extent that Clay's statement is hearsay, it satisfies the next level to be admitted through Carr's prior testimony. MRE803(2); *Smith*, 456 Mich at 550.

Alternatively, Clay's statement may not even be hearsay because it involved a command. As we have already noted, hearsay is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). A "statement" is "(1) an oral or written assertion or (2) nonverbal conduct of a person if it is intended by the person as an assertion." MRE 801(a). Commands are not hearsay because they do not involve an assertion. See *People v Bennett*, 290 Mich App 465, 483; 802 NW2d 627 (2010) (concluding that a statement to "tell the truth" was "not hearsay because it did not contain an assertion; it was a command); *People v Jones (On Rehearing After Remand)*, 228 Mich App 191, 204-205; 579 NW2d 82 (1998), mod in part on other grounds 458 Mich 862 (1998) (" 'Bitch, come out' contains no assertion. It is incapable of being true or false. It is a

command, not an assertion, and cannot be hearsay because it doesn't qualify as a 'statement.' "). Similarly, in this case, Clay's statement to "shoot, shoot" involved a command, not an assertion, and therefore would not qualify as hearsay.

In sum, Carr's investigative-subpoena testimony qualifies for admission under MRE 804(b)(1). Further, Clay's statement to "shoot, shoot" is not inadmissible hearsay because (1) it involves a command rather than an assertion and therefore does not qualify as hearsay in the first instance under MRE 801, and (2) it is nonetheless admissible under the excited utterance exception the hearsay rule contained MRE 803(2) even if the statement is considered hearsay.

Having determined that this evidence was admissible, our instructions from the Supreme Court require us to next determine whether exclusion of Carr's testimony was harmless or whether it is more probable than not that the error was outcome-determinative. *Lukity*, 460 Mich at 495-496.

Under *Lukity*, 460 Mich at 495-496, "a preserved, nonconstitutional error is not a ground for reversal unless 'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative." Here, defendant testified in support of his self-defense theory that he and Haus approached Henry's vehicle only intending to find out who was shooting at him and why. He claimed that he reassured Henry that he did not intend to hurt her and just wanted to "find out who these people were." Defendant claimed that it was Henry's act of grabbing for a gun from the passenger seat of her car that caused Haus to react by removing a gun from his waistband and shooting Henry. Although a gun was found in Henry's car after the shooting, there was no other evidence introduced to support defendant's claim that Henry attempted to use the gun before she was shot. Carr's testimony could have been used to show that Henry reached for the gun in her vehicle in accordance with Clay's instruction to "shoot, shoot," which would have supported defendant's claim that Haus reacted to Henry in self-defense when he shot her. The exclusion of this evidence deprived the jury of information that was probative of whether Henry had a reason to reach for and grab the gun in her car before she was shot and thus supporting of defendant's self-defense theory. Considering the materiality of this evidence, it is more probable than not that the exclusion of this evidence affected the trial's outcome. Thus, the erroneous exclusion of this evidence was not harmless.

## V. CONCLUSION

Defendant is entitled to a new trial because the trial court's error in failing to instruct the jury on self-defense was not harmless beyond a reasonable doubt. The proposed evidence from Carr's investigative subpoena testimony was admissible and its erroneous exclusion was not harmless. Because we have vacated defendant's conviction and the Supreme Court only instructed us to consider the sentencing issue "[i]f the Court of Appeals affirms defendant's conviction," *Rajput*, ___ Mich at ___; slip op at 7-8, we have not addressed the sentencing issue here.

We vacate defendant's conviction and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Stephen L. Borrello

-8-